JOHN J. SUNTKEN, Appellant, v. ENNO SUNTKEN, Appellee.

No. 43797.

MARCH 16, 1937.

R. L. Saley and Nagle & Hill, for appellant.

Uhlenhopp & Uhlenhopp, for appellee.

ANDERSON, J.—This action was commenced in the district court of Wright County in August, 1935, and was upon a promissory note executed by the defendant, Enno Suntken, dated September 3, 1931, and due March 1, 1933. The defendant in his answer admitted the execution of the note in suit and admitted that but for the amount due defendant on his counterclaim there would be due to plaintiff on said promissory note the amount thereof with accrued interest. The defendant then set up a counterclaim claiming against the plaintiff amounts due for board, room, and washing and for horse feed and barn room, the two items aggregating $2,950.94. Later, and the day before the

commencement of the trial, the defendant amended his answer and counterclaim increasing the total amount of his counterclaim to $3,464.84, and also claiming that a part of the consideration for the note in suit was the plaintiff's promise to pay a $2,000 note of the defendant's which was payable to one Tenus Johnson; that the plaintiff, John J. Suntken, did not pay the said Tenus Johnson note in accordance with said promise and that the defendant was later compelled to pay $2,250 to discharge the same, and that by reason thereof there was a partial failure of the consideration for plaintiff's note. The facts are quite complicated and controverted and it will be necessary to attempt quite a full statement in order that the issues presented on this appeal may be the better understood.

It appears that at the time the incidents herein related occurred the Suntken family consisted of Onno Suntken, the father, John J. Suntken, the plaintiff, Enno Suntken, the defendant, and Fred Suntken, brothers and sons of Onno, and a daughter, Grace Dirksen. For the purpose of brevity we will refer to the various members of this family by their first names in this opinion.

In February, 1925, the father, Onno, having lost his wife, ceased his farming operations and had a sale of the personal property upon what is known in the record as the home farm. The defendant, Enno, purchased at this sale property of the conceded value of $1,731. Enno then moved upon the home place as a tenant and his father continued to live with him there. The son, Fred, worked for his brother Enno on the farm as a hired hand, and the plaintiff, John J., also made his home there with his brother Enno. John J. seems to have taken care of his father's business, to some extent at least, and after the sale above mentioned took up the matter of Enno's indebtedness to his father and a promissory note was executed by Enno payable to his father for either $4,000 or $4,180, Enno claiming it was for $4,000 even. No witness other than the two brothers testifies as to the exact amount of this note, Enno claims that at the time of the execution of this note the consideration therefor was the $1,731 due his father on account of the property Enno had purchased at the public sale and John J.'s promise to pay a certain $2,000 note owed by Enno to one Tenus Johnson. Enno claimed that at that time there was $2,269 due on the Tenus Johnson note and that together with the sale account of $1,731 totaled

the amount of $4,000 for which the note was given to his father; and he claimed that John J. had said to him if he would include the amount due on the Tenus Johnson note in the note that was being executed to the father that he (John J.) would pay the Tenus Johnson note. Tenus Johnson testifies that there was never $269 accrued interest on the $2,000 note of Enno which he held. It should be noted here that John J. was a surety on the Tenus Johnson note. John J. disputes the testimony of Enno as to the consideration for the $4,000 or $4,180 note payable to the father and claims that nothing was said at the time the father's note was made in reference to the Tenus Johnson note or the payment thereof. John J. claims that Enno owed his father at that time other and additional amounts over and above the amount of the property purchased by Enno at his father's sale which, together with the amount of the sale, totaled $4,180. He claims the additional amount was made up of money borrowed by Enno from his father when Enno commenced farming operations, and the purchase price of a corn picker, $350, about 800 bushels of corn, 1800 bushels of oats, a quantity of hay, and some other items; that the corn at that time was worth about $1.00 per bushel and oats $.50 per bushel, and that all of these items were totaled up and computed and amounted to $4,180, and that a note for that amount was then given by Enno to his father. Enno admits getting the corn, oats and hay, but claims these items were in exchange for grain that he had delivered to an elevator and for which his brother John J. or his father obtained the returns. Enno admits in his testimony, however, that at the time the $4,000 note was executed he did owe his father for additional "stuff" including $350 for a corn picker. Enno also claims that at the end of the first year he was on the home he paid his father $450 and at the end of the second year he says, "I had some old debts and made some further payments of $200 or $250 on the old account, corn picker and such stuff. Three hundred dollars and more was for the corn picker and there was little other debts." It must be concluded from this testimony that at the time the note to the father was executed Enno was indebted to him in excess of $600, not considering the 800 bushels of corn and 1800 bushels of oats and a quantity of hay, which Enno admits he received from his father, but which he claims was in exchange for grain he had sent to an elevator from another farm he was on, but insists that the other items of indebt-

edness he admits he owed his father at the time of the execution of the note of $4,000 or $4,180 were not included in the amount of the note but that the amount of the note consisted only of the $1,731 sale account, and the amount of the Tenus Johnson note. Matters remained in the situation above detailed until September, 1931. At this time John J. appeared with the father's note and told Enno that the father had given the brother Fred and John J., Enno's note and asked Enno to execute two new notes, one payable to the brother Fred for $2,000, and one payable to John J. for $2,000; and John J. claims that he agreed to and did throw off the $180 balance of the father's note. At any rate, two new notes were made for $2,000 each payable to John J. and Fred, respectively, and the old note was surrendered to Enno. Enno claims the old note was lost but insists it was for $4,000 instead of $4,180 as claimed by John J. At the same time the Tenus Johnson note which remained unpaid was renewed and nothing was said by either of the parties as to the claimed promise of John J. to pay that note. About two years after these notes were executed to John J. and Fred, the father having died in the meantime, there seems to have been a serious break in the relations between Enno and his two brothers, John J. and Fred, and John J. left the home of Enno and in August, 1935, two years later, commenced this action upon his $2,000 note, and the defenses thereto, which we have heretofore mentioned, were interposed by the defendant, Enno.

The Tenus Johnson note was not paid and he brought action thereon against Enno and Enno was compelled to pay a judgment rendered thereon in the approximate sum of $2,250, and Enno claims that there was a failure of consideration in the father's note by reason of the fact that John J. did not pay the Tenus Johnson note, and that he (Enno) had been damaged to the extent of one-half of the amount he was required to pay thereon and claimed a credit by reason of such damage and failure of consideration as against John J.'s note, the sum of $1,125, and asked in his counterclaim that he be allowed the additional sum of $3,464.84 on account of board and lodging furnished his brother John J. over a period of nine or ten years, and for the care of John J.'s horse over the same period of time.

In submitting the case to the jury the trial court treated the failure of John J. to pay the Tenus Johnson note as a part of the counterclaim and submitted all three items as a counter-

claim. The jury returning a verdict for the defendant on his counterclaim for $2,425 without computing interest.

After a motion for a new trial and exceptions to instructions were overruled by the court, the court made the following final entry: "Defendant's motion for the allowance of interest is sustained; but since the allowance for keep of horse is sustainable only as an offset of plaintiff's note, defendant's recovery cannot exceed the amount of plaintiff's claim. It follows that neither party can take anything from the other. Both parties except. The court being of the opinion that the costs should be equally apportioned between the parties, it is ordered that plaintiff have and recover judgment against the defendant for one-half of the taxable costs herein, to wit, $41.40; and likewise that defendant have and recover judgment against the plaintiff for half of the taxable costs herein, to wit, $41.40. Both parties except."

From the above judgment and other rulings of the trial court which will be hereinafter noted the plaintiff prosecutes this appeal.

The instructions of the court are not contained in the record submitted to us, other than fragmentary parts thereof. The court did however instruct the jury that they need give no concern to plaintiff's note for the reason that the same is conceded and the amount claimed due thereon is admitted by the defendant, and that the jury should immediately turn their attention to the items of the counterclaim and determine how much, if anything, the defendant is entitled to receive on one or both of said claims. The court further instructed the jury that the matter of interest upon the counterclaims being a matter of mathematical computation only would be computed by the court in the event the verdict should be in favor of the defendant.

■■■ Instruction No. 4 was excepted to and is seriously attacked on this appeal. And in this instruction the court said: "It is the claim of the defendant that some time in February, 1925, he executed a $4,000 note to his father, Onno Suntken, to cover an indebtedness of some $1,731.00 to his father and some $2,269.00 to one Tenus Johnson with the understanding that plaintiff would pay the Tenus Johnson note and exonerate the defendant from any liability therefor. He then claims that later, to wit, on September 3rd, 1931; such $4,000.00 note was renewed by the execution of two separate $2,000.00 notes of

which the note in suit is one. He claims that the plaintiff contrary to his agreement never paid the Tenus Johnson note but that he himself has had to pay it. -He claims that he has been damaged by such breach of agreement to the amount of $2,250.00 but is asking half of that amount or $1,125.00 against the plaintiff in this case. If you find from the preponderance of the evidence that the defendant executed and delivered to plaintiff a $4,000.00 note as thus claimed in consideration of the plaintiff assuming and agreeing to pay the Tenus Johnson note aforesaid then since it is conceded that plaintiff has not paid said note and that defendant has had to pay it you are warranted in allowing the defendant's claim in this respect in the sum of $1,125.00 and no more.''

The plaintiff objects to this instruction and contends that it ought not to have been given at all, and that the court erred in not sustaining plaintiff's motion to withdraw from the jury all claims made for the alleged failure on the part of the plaintiff to pay the Tenus Johnson note. Plaintiff claims there is no evidence that would support in any way a finding that there was any contract whereby plaintiff became obligated to pay the Tenus Johnson note; and there is no claim and no proof that the defendant gave to the *plaintiff* a $4,000 note as is stated by the court in instruction No. 4, and further that even if such promise was made by the plaintiff it was without consideration and in no way binding upon the plaintiff. The $4,000 note was not payable to John J. but to his father, and the real question and the only one to be determined by the jury on this issue is as to whether or not there was any consideration for the $4,000 note payable to the father other than the $1,731 as claimed by the defendant, Enno. In other words, was the full consideration for the $4,000 or $4,180 note due the father from Enno at the time the note was executed? and the court should have instructed the jury as to the plaintiff's claim that the sale account together with other items that Enno owed his father totaled the amount of the $4,000 or $4,180 note. In other words, the jury could have concluded from instruction No. 4 that a part of the consideration for the $4,000 note was John J.'s promise to pay the Tenus Johnson note, and the Tenus Johnson note not having been paid by John J., the jury were warranted in allowing defendant's claim on that account in the sum of $1,125; and in considering this question from this view point the jury would be

warranted in not considering plaintiff's claim that the Tenus Johnson note furnished no part of the consideration for the execution of the $4,000 note, and that the full consideration for such note was valid indebtedness owed by Enno to his father. If, when fairly submitted to the jury, the jury should find that there was no indebtedness to the father included in the $4,000 note other than the sale account, then there would be a partial failure of consideration regardless of whether or not there was a valid promise on the part of John J. to pay the Tenus Johnson note, and this matter should have been fully and fairly stated to the jury in the court's instructions. Especially is this true on this record where Enno admits that at the time of the execution of the note to his father he owed his father other items of an indebtedness of approximately $600 not including the grain received by Enno from his father over which there appears to be a fair controversy. It is true that if there was a partial failure of consideration for the $4,000 note as claimed by Enno, John J. knew of such infirmity at the time the substituted notes were taken therefor, and the $2,000 note in suit would be burdened with and subject to such infirmity; but the contentions of both parties in reference to this question should have been submitted to the jury. We are constrained to hold that instruction No. 4 tended to mislead and confuse the jury, and that the giving thereof was error.

There is one other alleged error which it will be necessary to dispose of in view of the fact that another trial will be necessary, and that is the admissibility as evidence of a letter written by one J. E. Williams, an attorney of Mason City, Iowa, containing a statement of facts and addressed to John Suntken and Brother, under date of January 23, 1934. This letter was apparently written after controversies had arisen between Enno and his brothers in reference to some of the matters involved in the present litigation. The record shows that Mr. Williams was the attorney for Enno Suntken; that he had been consulted many times by Enno in reference to the controversies with his brothers, and that he (the attorney) had consulted with all of the brothers at various times in reference to an adjustment of their controversies. The record shows that Mr. Williams acted for Enno during the entire year of 1934; that Williams appeared for him in the defense of the case brought by Tenus Johnson on his note, and that he (Williams) had been put in possession of all of the

facts surrounding the controversies in the present litigation. The letter in question was as follows:

"J. E. Williams, Attorney and Counselor-at-Law, 604-606 M. B. A. Building, Mason City, Iowa. January 23, 1934. Mr. John Suntken & Brothers, Alexander, Iowa. Dear Sir: Your brother Enno Suntken of Alexander, Iowa has counseled with me again concerning your failure to deliver to him Deed to the North Half (N ½) of the Northeast Quarter (NE ¼) and the Southwest Quarter (SW ¼) of the Northeast Quarter (NE ¼) of Section Twenty-nine (29) Wisner Township, Franklin County, Iowa, left in escrow by your father for delivery to him by you at your father's death, and has asked me unless an amicable settlement can be obtained to at once institute Mandamus proceedings to compel delivery of the Deed to him.

"As I told you when you were in my office the other day with your neighbor Hans Barkema, I have advised Enno to make a just settlement with you rather than throw this matter into Court and I am very glad to report today that Enno has told me that he would follow my advise and counsel in the matter.

"Shortly reviewing the facts it would seem that at this time Enno owes you John $2,000.00, owes Fred $2,000.00 and owes Tenus Johnson of Alexander $2,000.00 upon which you are surety. When the Deed which his father left with you to deliver to Enno is delivered, then he will owe his sister Grace Dirksen of Alexander, Iowa, $3,778.00.

"At the close of this rental year without further payments Enno has paid to you for the 240 acre farm which he has been farming $1,800.00, $1,000.00 in 1931 and $800.00 in 1932. At $500.00 per year for these three years for the 120 acres which belonged to Fred he should have paid only $1,500.00. However, if you have paid the taxes for these three years it would just about even the rent account if Enno pays nothing this year. He of course should not have been paying anybody rent for the 120 acres which was his.

"Now upon this 120 acres which goes to Fred, Enno, with the consent of his father and the right to remove same has placed upon Fred's 120 acres three buildings, one hog house, one corn crib and one machine shed which Enno says were constructed at a cost to him of more than $1,000.00.

"With these facts as a basis, as counsel for Enno, I propose the following settlement.

"1. He will leave the buildings constructed by him and which he has a right to remove, approximate value $1,000.00, upon Fred's farm and receipt the Estate in full for all care of his father during the last years of his life.

"2. He will Deed to you and Fred the Southwest Quarter (SW ¼) of the Northeast Quarter (NE ¼) of Section Twenty-nine (29) Wisner Township, Franklin County, Iowa, in full for the return of his $2,000.00 note to Fred and his $2,000.00 note to you.

"3. He will Deed to his sister Grace Dirksen the Northeast Quarter (NE ¼) of the Northeast Quarter (NE ¼) of the above designated Section in full of his note to her which will become her property when you have delivered the Deed left with you by your father to him.

"4. He will give to Tenus Johnson his note for $2,000.00 with interest at five per cent (5%) per annum, due in either three years or five years and secure same by first Mortgage on the Northwest Quarter (NW ¼) of the Northeast Quarter (NE ¼) of the above designated section Twenty-nine (29) to take up the note upon which you are surety now for him.

"5. He will deliver to you possession of the buildings and premises now occupied by him upon Fred's farm on or before March 1, 1934.

"After going to the bottom of the facts in this case and talking with Enno, with you John, with Joe and your neighbor, Hans Barkema and also having talked the matter over with Leppo Wiemann, I am satisfied that the above settlement constitutes a most fair and amicable settlement of this whole matter and I believe that any fair minded man whether layman, counsel or Judge would say the same.

"Under the Mandamus action to compel you to deliver this Deed I have no question but that the Court would compel its delivery. The father left this farm to Enno for a home and he could and would claim forty acres of it which would be his homestead which would be exempt to him. Probably one half of his personal property upon his farm is exempt to him under the laws of this State so that if you began action upon your various notes you would probably have great trouble in collecting 25% thereon.

"Under the settlement proposed Enno believes he is making full settlement and you cannot complain but what it is as full a settlement as it is possible for him to make without selling the tools and stock which he owns and sacrificing the very bread of his wife and children. This it does not seem to me should be the action of brothers, but should be left, if left at all, only to the hardened conscience of professional money makers.

"You of course know that it is important to Enno to determine at any early date what your intentions in the matter are so that he has only authorized me to make this offer to remain open for a period of one week from this date; after that if you cannot accept same he will be forced into Court in order to obtain title to his property.

"Asking that you consider this offer in the spirit in which it is made in order to avoid long drawn out litigation and loss to all parties concerned and that after such consideration and within one week from the date you receive this letter you advise me of your decision in the matter, I am, Yours very truly, J. E. Williams (Signed) J. E. Williams.''

Defendant's objection to the introduction of the foregoing letter was that it was incompetent and immaterial, that no authority was shown for the writing thereof, and that it constitutes an offer of compromise, and is inadmissible for all the reasons stated. The objection was as to the introduction of the entire exhibit.

▮▮▮ It has been determined that admissions of an attorney, whether written or oral, if relevant and material and within the scope of his employment are admissible against his client.

"An attorney may make admissions of fact which will affect his client provided that his authority is made affirmatively to appear by evidence other than the attorney's declarations and the statement is shown to have been made within the actual or ostensible scope of authority, during the continuance of his agency, and while engaged in a bona fide attempt to discharge the duties of his employment.'' 22 Corpus Juris 393, Sec. 468. The above text is supported by practically universal authority. We have sustained the general rule in numerous cases. Neindorf v. Van De Voorde, 143 Iowa 318, 120 N. W. 84, 85; Meginnes v. McChesney, 179 Iowa 563, 160 N. W. 50, 56, L. R. A. 1917E, 1060.

In the Neindorf case we said, on page 321 .of the official report:

"The first complaint relates to the admission of the testimony of plaintiff in relation to his conversation with Abbott (attorney). It appears from this testimony that just before the commencement of this suit Abbott offered the plaintiff $100 in full satisfaction of his note. It is urged here that the admission of this testimony was improper, because it was an offer of compromise. This was not the objection urged in the court below. The contention there was that it was not shown that Abbott had any authority to make the offer. Abbott was at the time of trial an attorney of record in the case, and was called to the witness stand by the plaintiff, and examined as to his authority at the time of such conversation. He testified that he acted of his own motion, and that he had no authority from the defendants at that time. But the plaintiff testified that just before such conversation he had a conversation with the defendants. They told him 'to go to Abbott and get the money'. In pursuance of this direction, the plaintiff went to Abbott. He testified that prior to his conversation with Abbott he did not know that the defendants were making any claim against him. The form in which the information came to him from Abbott was that Abbott offered him $100 to settle it, and said: 'If I didn't, it would cost me over $500 by the time I got through with it.' Under this showing the testimony was not amenable to the objection made to it."

In the Meginnes case, speaking through Justice Ladd, we said, on page 581 of the opinion:

"Koser, one of the attorneys for the claimant, received the note for collection shortly after decedent's death. On the 11th of November, 1913, he addressed a letter to the executor, saying, in substance, that he was enclosing a copy of an affidavit of one Frontman, and that claimant said she could procure a number of them proving the note to be genuine, and 'that it was the intention of your father to make her a gift of this money'. He urged settlement. The affidavit of Frontman was that decedent had told him that he had made a note to her for $5,000, and that she should have this money for a Christmas gift. This letter was excluded from evidence, on the objection that it was incompetent, immaterial and irrelevant, and not binding on claimant or

in any manner affecting her right to recover. The ruling was erroneous. McRea v. Bank, 16 Ala. 755; Stinesville & B. Stone Co. v. White, 32 Misc. 135, 65 N. Y. S. 609; * * * Blessing v. Dodds, 53 Ind. 95; * * * 1 Elliott on Evidence, Sec. 256. The attorney, in writing the letter and enclosing the affidavit, was acting within the scope of his employment, and his statements therein were admissible in evidence. Loomis v. New York, N. H. & H. R. Co., 159 Mass. 39, 34 N. E. 82.''

It has been held by the Texas court that a letter written by plaintiff's attorney stating that property injured was owned by another, was admissible to show that plaintiff was not the owner. Logre v. Galveston Electric Co. (Tex. Civ. App.), 146 S. W. 303.

It has been held where, in an action on a note given for plumbers' services, defendant claimed that she had been induced to give the note by fraud and duress and that the work and materials furnished were of no value, it was error for the court to exclude a letter written by the defendant's attorney in response to a bill for the work, in which the attorney requested an itemized bill of the materials used in the job, and stated that the defendant would pay the bill as soon as satisfied of its correctness; such letter was held admissible, and it was further held that the letter itself was prima facie within the attorney's authority. McNamara v. Douglas, 78 Conn. 219, 61 Atl. 368.

Greenleaf on Evidence, Vol. 1, page 322, lays down the following rule:

''But if there is an independent admission of fact merely because it is a fact, it will be received; and even an offer of a sum by way of a compromise of a claim tacitly admitted is receivable, unless accompanied with a caution that the offer is confidential.''

''An offer of compromise may be admissible as relevant circumstantial evidence to prove a fact other than that of liability, such as waiver, good faith in asserting a claim, etc. Statements of facts independent of the concessions involved in an offer of compromise are competent as admissions since they are supposed to have been made because of belief in their truth. This rule applies although such statements directly relate to a compromise offer or were made pending compromise negotiations. * * * In other words, an admissible statement of fact need not be independent of the subject matter of the controversy. It is sufficient

if the statement is a distinct admission of a fact as distinguished from an offer to buy peace or settle a controversy.'' 22 Corpus Juris, page 314.

In Kassing v. Ordway, 100 Iowa 611, 69 N. W. 1013, 1014, where the question of the admissibility of certain statements made by the plaintiff were in issue and in which the trial court withdrew the conversation containing certain statements from the jury on the ground that it was in the nature of an offer to compromise, this court said in disposing of the question:

''Some of the statements we have set out are in the nature of unqualified admissions of the indebtedness to the amount of more than the sum last named, and were not mere offers of compromise. We conclude, therefore, that they were competent evidence for the intervenor, and that the court erred in excluding them. Bayliss v. Murray, 69 Iowa [290] 292, 28 N. W. 604; * * * The truth involved in the conflict between the testimony of the plaintiff, to the effect that his statements were merely offers to compromise, and that on the part of the intervenor, that they were unqualified admissions of indebtedness to an amount stated, was for the jury to determine.''

In Rosenberger v. Marsh, 108 Iowa 47, 51, 78 N. W. 837, 838, considering the question as to whether certain letters contained offers of compromise, this court said:

''Certain letters written by defendants, and containing admissions of liability to the amount of plaintiff's claim, with the exception of a few small items, * * * were offered in evidence. They do not seem to be an offer of compromise. If they were, they contain statements of fact which were proper to be considered by the jury. The objections to their introduction were properly overruled.''

In Boylan v. McMillan, 137 Iowa 142, 114 N. W. 630, 631, we had this question under consideration and said:

''It is the general rule that an offer of compromise is inadmissible; but, when the instrument containing the offer also contains other material matter, there is a diversity of judicial opinion as to where the duty lies to separate the admissible from the inadmissible part thereof. This court has held in analogous cases that, if a part of an instrument is admissible, an objection

to the whole instrument is not good, and that it is the duty of the objector to specify the objectionable part. * * * We know of no sound reason why the rule should not be applied to an instrument containing an offer of compromise, and if the letter in question can be said to contain material matter independent of the offer of compromise, the objection made to the whole thereof was too broad, and it was not error to receive it.''

We have carefully analyzed the letter involved under this assignment. We do not believe it contains an offer of compromise. It does contain statements of fact as to the note in suit highly detrimental to the claims made by plaintiff in the case, but it nowhere contains an offer of settlement which can in any way be construed as an offer of compromise. It plainly admits the indebtedness due John J. upon the note in suit; admits the indebtedness to Fred on the companion note, and admits the indebtedness of Enno on the Tenus Johnson note. It offers to pay the two notes held by John J. and Fred by deeding to them a certain forty acres of land, and agrees to surrender the possession of a certain farm owned by Fred. This letter was written long before the commencement of this litigation. It was not an offer of compromise. The fact that the attorney, Williams, who wrote the letter was attorney for Enno and was acting for him and demanding for Enno the delivery of a deed which was held by John J. in escrow and threatening to commence an action in mandamus to compel the delivery of this deed shows sufficient authority upon the part of the attorney to write the letter in question for and in behalf of Enno. Then too, Enno testifies himself that Williams was his attorney during the whole of the year 1934, and was not discharged until just before Christmas of that year; that he had consulted him many times over the affairs of his father's estate and his controversy with his brothers. Enno nowhere denies in his testimony Williams' authority to write the letter in question. Williams also appeared for Enno in the action brought against him by Tenus Johnson on the note held by Johnson and, when asked by the court as to why he did not make the claim in the Johnson suit that his brother John J. had agreed to pay that note he evaded the question two or three times and finally answered that he did not make such claim in that suit because he did not have time, and the court further asked him, ''Well, you had consulted Mr. Williams at Mason City, hadn't you?'' to which Enno answered ''yes''.

We are of the opinion that authority of the attorney for writing the letter in question is sufficiently shown by the statements of the defendant himself as well as by the surrounding circumstances, and as well as by the language of the letter itself. We are also of the opinion that the letter does not contain an offer of compromise, and even if it did, the objection interposed to its offer in evidence was as to the entire letter and was not directed to any specific part of the letter which it is claimed contained an offer of compromise; and as the letter did contain pure statements of fact other than any possible offer of settlement or compromise such an objection is not sufficient.

It is our holding that the letter in question was properly admissible in evidence; that its contents were relevant and material, and that the refusal to permit its introduction was prejudicial error.

For reasons stated in the foregoing opinion it is necessary that the case be reversed and remanded.—Reversed.

RICHARDS, C. J., and DONEGAN, PARSONS, SAGER, HAMILTON, KINTZINGER, and STIGER, JJ., concur.

MITCHELL, J., concurs specially.

MITCHELL, J. (specially concurring)—I concur in the result but not in that part of the opinion which holds that the letter of J. E. Williams, an attorney at Mason City, Iowa, was admissible. In my judgment the letter is an offer of compromise, and, as such, is not admissible. I quote from the opinion:

"It offers to pay the two notes held by John J. and Fred by deeding to them a certain forty acres of land and agrees to surrender the possession of a certain farm owned by Fred."

This, in my judgment, is not an offer to pay; it is simply an offer to compromise by turning over the respective pieces of real estate described in the letter, for certain notes. There is no showing that the land was worth the amount of the notes, and it can hardly be considered payment. In fact, it is, as stated in the letter, a settlement or compromise.