**Bonnie KRUGMAN, Appellant,**

v.

**PALMER COLLEGE OF CHIRO-
PRACTIC, Warren Rhodes, and
Patrick T. Keefe, Appellees.**

No. 86–896.

Supreme Court of Iowa.

April 13, 1988.

Rehearing Denied June 15, 1988.

Paul R. O'Malley of O'Malley and O'Malley, Ltd., Chicago, Ill., and Winstein, Kavensky, Wallace & Doughty, Rock Island, Ill., for appellant.

John J. Carlin and Robert D. Lambert of Carlin, Hellstrom & Bittner, Davenport, for appellees.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, LAVORATO and ANDREASEN, JJ.

McGIVERIN, Chief Justice.

Plaintiff Bonnie Krugman appeals the trial court's order precluding her from using three of her medical experts at trial and dismissing her petition as a sanction for failing to meet court-ordered discovery deadlines. Additionally, plaintiff asserts error in earlier orders denying her motions for a trial continuance. We believe one issue is determinative of this appeal: whether the trial court abused its discretion by imposing the harsh sanction of dismissing the plaintiff's petition. The court of appeals held that there was an abuse of discretion, reversed the trial court, and remanded for a trial. Finding no abuse of discretion in the trial court's dismissal ruling, we vacate the court of appeals decision and affirm the trial court. Thus, we do not reach the question of plaintiff's use of experts or her motions for continuance.

I. *Background facts and proceedings.* This case stems from plaintiff's allegation that negligent care she received at the Palmer College of Chiropractic from defendants Warren Rhodes and Patrick T. Keefe on September 3, 1980, directly caused a stroke she suffered the following day. The stroke necessitated major neurosurgery and left her partially paralyzed. Deciding to bring suit, she sought the counsel of Paul R. O'Malley, a Chicago attorney well versed in medical and chiropractic malpractice litigation. O'Malley obtained the services of Winstein, Kavensky, Wallace and Doughty of Rock Island, Illinois, as local counsel for an action in the Iowa district court.

Plaintiff filed her petition in this case on September 1, 1982, only three days before the statute of limitations on her cause of action would have run. *See* Iowa Code § 614.1(9) (1979). This late filing set the tone for attorney O'Malley's subsequent actions on Krugman's behalf.

After filing their answers, defendants, Palmer College of Chiropractic, Rhodes and Keefe, served plaintiff with a set of interrogatories which included requests for the names of the plaintiff's expert witnesses, the general substance of their opinions, and the facts upon which those opinions were based. *See* Iowa R.Civ.P. 125(a). Plaintiff responded that those interrogatories could not be answered because no expert had yet been retained.

Over the next six months, defendants made repeated attempts, pursuant to Iowa Rule of Civil Procedure 125(c), to get the plaintiff to supplement her answer to interrogatory number seven concerning plaintiff's medical experts. The court, at defendants' request, entered an order dated May 9, 1983, requiring plaintiff to file a list of experts and answer defendants' interrogatories before filing a certificate of readiness for trial.

On February 1, 1984, seventeen months after the case was first filed, defendants filed a motion for summary judgment. *See* Iowa R.Civ.P. 237. Their motion, supported by the opinions of two treating neurosurgeons and a chiropractor, argued that there was no causal connection between the chiropractic care plaintiff received and her subsequent stroke and noted that the plaintiff had yet to secure an expert medical witness. In response to defendants' summary judgment motion, plaintiff's attorney obtained a sixty day extension of time to depose four of defendants' medical experts. Although O'Malley did not depose those experts, on May 23, 1984, he filed the affidavit of a Chicago physician, Dr. Neil Allen, stating that Dr. Allen believed there was a causal connection between plaintiff's chiropractic care and her stroke.

No further action occurred in the case until 1985. Then, pursuant to Iowa Rule of Civil Procedure 215.1, the case was scheduled to be dismissed for want of prosecution and notice was sent to all parties. On September 16, 1985, in response to the rule 215.1 strike notice, plaintiff filed a trial certificate of readiness, *see* Iowa Rule of Civil Procedure 181, stating that the case would be ready for trial on January 10, 1986. A trial setting conference was held the next month on October 22, 1985, at which time all counsel agreed to a trial date of April 28, 1986, and the case was removed from the rule 215.1 strike list.

Defense counsel, after repeated attempts to depose Dr. Allen, then filed a motion to compel his production for a deposition. A deposition was finally obtained in late December 1985, over eighteen months after Dr. Allen's affidavit was filed.

The following month, the defendants also filed a motion for scheduling order with the court noting that the previous order of May 9, 1983, which required plaintiff to list her expert witnesses and supplement her interrogatory answers before filing a certificate of readiness, had not been honored. *See* Iowa R.Civ.P. 125(c) and 136(b). A scheduling order was entered on January 28, 1986.[1] In that order, plaintiff was required to list her expert witnesses by February 28 and defendants were required to list their experts by March 14. Discovery was to be concluded by both sides on April 14.

Two days later, on January 30, attorney O'Malley participated in a pretrial conference in an Illinois action. He agreed to try the Illinois case beginning April 14. O'Malley expected that case to last only two weeks, allowing him to be free for the Krugman trial date of April 28. Opposing counsel in the Illinois case, however, expected the case to take a minimum of three weeks.

By agreement of the parties on February 19, Dr. Kassell, one of the neurosurgeons who treated Krugman, was to be deposed in St. Louis, Missouri, on March 14. Dr. Kassell was deposed on that date by defendants' attorneys, but O'Malley failed to appear to cross-examine or to take a separate discovery deposition he had scheduled with Dr. Kassell.

Plaintiff submitted a letter to defense counsel on February 28 listing three new experts, but the letter did not divulge the opinions they might offer at trial or the facts upon which their opinions would be

---

1. All dates in the remainder of this opinion occurred in 1986 unless stated otherwise.

based. The letter added that "other [unnamed] treating physicians disclosed through discovery" might be called to offer expert testimony at trial. Defendants then filed their list of experts which included the names of two new experts not previously listed along with eleven other experts of whom plaintiff was previously made aware.

April saw a flurry of motions, hearings and rulings in this case. Defendants sought court ordered supplementation of their original interrogatories, particularly interrogatory number seven relating to plaintiff's experts and their opinions and exclusion of any expert witness not properly identified. *See* Iowa R.Civ.P. 125(c) and 134(a). That order was granted on April 1. In addition to compelling plaintiff to supplement her answers by April 4, the order required that plaintiff make her experts available for deposition prior to trial or risk Iowa Rule of Civil Procedure 134(b) sanctions. Plaintiff mailed a supplemental answer to interrogatory seven on April 4. It arrived and was filed April 7, one working day late.

The following day, at a motion for summary judgment hearing, attorney O'Malley filed a motion for continuance. He stated to the court for the first time that he was involved in a complex medical malpractice trial in Illinois that would interfere with his ability to properly prepare for Krugman's trial and would overlap the trial dates then slated for Krugman's trial. O'Malley also sought continuation of the final pretrial conference date in the Krugman case because he had scheduled an important deposition in his Illinois action on the same date.

On April 9, Judge Briles overruled the motion for continuance; and, because another date could not be agreed upon which would not conflict with O'Malley's Illinois commitments, the final pretrial conference was canceled. Additionally, the court ordered plaintiff to file the documents required by court rule 7.1B of Iowa's seventh judicial district on or before April 21 (those documents were the exhibit list, pretrial brief, proposed jury instructions, and negligence action checklist including a detailed itemization of damages). We quote rele-

vant sections of the court's ruling which explain its decision:

No good cause is shown for a continuance. All fault and neglect in this case has been by the plaintiff. It is obvious to the Court that by the failure of the plaintiff to file a supplemental answer to Interrogatory No. 7 of the Palmer College interrogatories, the plaintiff never intended to be ready for trial on the 28th of April, 1986. The plaintiff has taken no move to take evidentiary depositions of her own experts, although her attorney advises that he does plan to present the testimony of some, if not all of them, by evidentiary deposition. It is clear that the attorney for the plaintiff has known since February that he was planning to use these doctors. The failure to file the answers to the interrogatories designating these persons as experts and supplying the other information required appears to have been a deliberate ploy to avoid the trial date which had been set October 22, 1985.

Counsel complains that he has to try a three-week complex medical malpractice case in Rock Island, Illinois, beginning on April 14, 1986. This [the Illinois] case, however, was set only three months ago, and counsel does not pretend that he ever told the Illinois judge that he had this conflict and that if that case could not be tried in two weeks he would not be able to try it.

. . . .

The Court notes that competent trial counsel from Rock Island, Illinois, members of whom are qualified to practice law in the State of Iowa, have appeared in this case since its inception. Plaintiff's counsel has not advised the Court that there are not other persons in his law firm who could try one or the other of these two cases, and the Court finds no reason to relieve plaintiff's attorney or the plaintiff from the situation in which they have placed themselves. This case has been on file for three and one-half years, and that is long enough. If the case were not tried April 28th, it would be a substantial period of time

before another trial setting would be available.

Subsequently, the defendants filed a motion for sanctions asking that the three experts identified by plaintiff in February be barred from testifying because plaintiff had not met the April 4 supplementation deadline. Also, plaintiff filed a motion to reconsider her application for a continuance. In answer to Judge Briles' earlier ruling, attorney O'Malley added in that motion that he was the only attorney sufficiently knowledgeable to try either the Illinois case or the Krugman case, that he had too little time to depose the five newly listed experts before trial, and that the Illinois judge had refused to continue that case.

A hearing was held on both motions on April 16. O'Malley managed to attend despite the fact that his Illinois trial had already begun. In an order filed April 21, Judge Briles refused to continue the trial and ruled that plaintiff's experts should be deposed on the date of trial. The court added that plaintiff's experts could be barred from testifying in the trial if the lateness of deposition testimony taken on the trial date showed prejudice to defendants' case.

On April 28, neither the plaintiff, her experts nor attorney O'Malley appeared for trial or depositions. Attorney Alan Hartsock of the firm that was co-counsel with attorney O'Malley appeared, but Hartsock was not prepared to try the case. Defendants and their counsel and a jury panel were present for trial. Judge deSilva, sitting as the trial court, imposed sanctions on plaintiff under Iowa Rule of Civil Procedure 134(b). The court ruled that plaintiff's experts were barred from testifying. It also dismissed plaintiff's petition. After unsuccessfully moving to vacate that ruling, plaintiff appealed.

II. *Dismissal as a sanction.* Initially, we must determine whether dismissal was a proper sanction in this case. If it was, all of the other issues raised on this appeal are moot.

The legal standards by which we judge a court's exercise of discretion in imposing sanctions are well established. Our decision in *Postma v. Sioux Center News,* 393 N.W.2d 314 (Iowa 1986), condensed the following statement of the law from our prior opinions for the guidance of the bench and bar:

Iowa rule of civil procedure 134(b)(2)(C) expressly authorizes a court to dismiss an action as a sanction for failing to comply with the discovery order. *See* Annot., 32 A.L.R.4th 212 (1984).

We have long recognized that "[i]mposition of discovery sanctions by a trial court is discretionary and will not be reversed unless there has been an abuse of discretion." *Suckow v. Boone State Bank & Trust Co.,* 314 N.W.2d 421, 425 (Iowa 1982); *State ex rel. Parcel v. St. John,* 308 N.W.2d 8, 10 (Iowa 1981); *Eickelberg v. Deere & Co.,* 276 N.W.2d 442, 446 (Iowa 1979); *Haumersen v. Ford Motor Co.,* 257 N.W.2d 7, 14 (Iowa 1977). Where, however, the trial court selects dismissal of the action as the appropriate discovery sanction, the range of discretion is narrowed. *Smiley v. Twin City Beef Co.,* 236 N.W.2d 356, 360 (Iowa 1975). We have held that "[i]n order to justify dismissal of the action, a party's non-compliance must be due to willfulness, fault or bad faith." *Suckow,* 314 N.W.2d at 425, *citing McQuillen v. City of Sioux City,* 306 N.W.2d 789, 791 (Iowa 1981) (plaintiff's willful non-compliance with court order to submit to a medical examination justified sanction of dismissal).

We have divided our decisions involving discovery sanctions into two categories: (1) violation of a trial court discovery order, and (2) violation solely of a rule of civil procedure relating to discovery. *See Suckow,* 314 N.W.2d at 425–26. A comparison of the two classes of cases "makes it clear that dismissal is a discovery sanction generally used when a party has violated a trial court's order." *Id.* at 426, *citing Zimmerman v. Purex Corp.,* 256 Iowa 190, 194–95, 125 N.W.2d 822, 825 (1964) (sanction was improper in the absence of a court order

setting a specific time limit to answer interrogatories).

*Id.* at 318.

These principles guide our analysis of Krugman's appeal.

Given the foregoing authorities, it was within the trial court's discretion to order dismissal. Plaintiff violated (1) the January 28 order by failing to complete discovery; (2) the April 1 order by filing her supplementation to defendants' interrogatory number seven late, and by failing to make her experts available for discovery as ordered; and (3) the April 9 order by failing to file the settlement conference documents required under district court rule 7.1B. Attorney O'Malley was aware of these orders and willfully did not comply with them in the hope, it appears, that a motion for continuance would solve his difficulties.

When the trial court dismissed plaintiff's petition in April 1986, it was under a duty to consider our case processing time standards in its deliberations. *See* Iowa Court Rules, Time Standards for Case Processing [supreme court order August 22, 1985; effective October 1, 1985]. The suggested time standard for civil jury cases from filing to disposition is eighteen months. On the date of trial, this action was over three and one-half years old, and the trial court was faced with the choice of either continuing or dismissing the case. Understandably, the trial court focused upon attorney O'Malley's conduct in failing to adequately prepare the case for trial to facilitate its disposition.

 We agree with the trial court that the fault here lies with attorney O'Malley. He agreed to several dates that he later failed to meet, and he agreed to them knowing the potential for conflict. Most of his trial preparation was done in response to various motions by opposing counsel. Despite O'Malley's considerable efforts in the last twenty days before trial to explain and justify his predicament to the trial court, we conclude it was not an abuse of discretion in this case to find that O'Malley's efforts came too late to extract him from a predicament of his own making.

*See generally Suckow v. Boone State Bank & Trust Co.,* 314 N.W.2d 421, 425–26 (Iowa 1982) (digesting various cases where sanctions have been enforced).

We also find it relevant that there is a long record of procrastination and inattentiveness on O'Malley's part in this case. A party responding to an interrogatory has a continuing duty to supplement a response concerning the identity, subject matter and substance of testimony of an expert witness. *Hubby v. State,* 331 N.W.2d 690, 697 (Iowa 1983); Iowa R.Civ.P. 125(a)(2). O'Malley has neglected to follow this rule, even at court order. Judge deSilva found that "The totality of the record establishes willfulness, bad faith, fault and gross neglect, all to the prejudice of [defendants]." We cannot say in light of attorney O'Malley's overall conduct that the court abused its discretion in dismissing plaintiff's petition.

As attorney O'Malley urges, there are similarities between this case and *Department of General Services v. R.M. Boggs Co., Inc.,* 336 N.W.2d 408, 411 (Iowa 1983), which held that an attorney scheduled for simultaneous trials should have been granted a continuance. There are also important differences. The conflict in *Boggs* involved two overlapping trials in the same courthouse, facilitating resolution within our unified court system. More importantly, the attorney in *Boggs* alerted the court to the conflict and agreed to the trial date in question with the caveat that a conflict might later arise. Had O'Malley done the same thing, even though his conflicting trials were in different jurisdictions, he would have reduced confusion, expense and frustration for all parties involved.

As we have cautioned before, continuances are to be discouraged, and attorneys should not take responsibility for more litigation and legal work than they can reasonably handle. *Boggs,* 336 N.W.2d at 411. Where possible, more than one attorney should be versed in pending litigation. While the other attorneys of record in this case may not have been experts in chiropractic malpractice claims, their help might

at least have been used in depositions if not at trial.

We regret that the sanction in this case visits the sins of counsel on his client. But "[a] litigant chooses counsel at his peril, and here, as in countless other contexts, counsel's disregard of his professional responsibilities can lead to extinction of his client's claim." *Cine Forty–Second St. Theatre v. Allied Artists*, 602 F.2d 1062, 1068 (2nd Cir.1979) (citing *Link v. Wabash R. Co.*, 370 U.S. 626, 633–34, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734, 740 (1962)).

III. *Disposition.* Finding no abuse of discretion, we affirm the trial court's ruling and judgment dismissing plaintiff's cause of action. The other issues raised in this appeal are thus made moot, and we do not address them. The decision of the court of appeals reversing the trial court is vacated.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.