Michelle TROENDLE and Gladys
Troendle, Appellants,

v.

Dale HANSON and Ruth
Shafer, Appellees.

No. 96–1560.

Supreme Court of Iowa.

Nov. 26, 1997.

Bruce L. Braley of Dutton, Braun, Staack, Hellman & Iversen, P.L.C., Waterloo, for appellants.

David L. Riley and Karla J. Shea of Yagla, McCoy & Riley, P.L.C., Waterloo, for appellees.

Considered by McGIVERIN, C.J., and LAVORATO, NEUMAN, ANDREASEN, and TERNUS, JJ.

TERNUS, Justice.

In this appeal, the plaintiffs challenge the district court's imposition of the ultimate discovery sanction—dismissal. In three separate court orders, the district court directed the plaintiffs to respond to discovery requests propounded by the defendants. Notwithstanding the court's directives, the plaintiffs' attorney failed to obtain his clients' responses to discovery until the eve of trial, almost one full year after the requests were propounded. The district court, exercising its discretion, concluded the adverse consequences of this situation should fall on the party responsible for creation of the problem before it. That party was the plaintiffs, whose agent—their attorney—willfully disobeyed three district court orders directing his clients to respond to the outstanding discovery requests. Accordingly, the district court decided to dismiss the plaintiffs' case rather than delay the trial date. Because we

find this decision a reasonable exercise of the district court's discretion, we affirm.

## I. *Background Facts and Proceedings.*

The plaintiffs, Michelle Troendle and Gladys Troendle, filed this action against the defendants, Dale Hanson and Ruth Shafer, seeking damages arising from an automobile accident. The petition was filed on June 28, 1995. On July 14, 1995, the defendants served a set of interrogatories and a request for production of documents on the plaintiffs. The information requested was routine: medical records, tax returns, and the identity and expected testimony of experts. For the following three months, the defendants' counsel tried informally to obtain the requested information and documents from the plaintiffs' then attorney, J.D. Villont. Being unsuccessful, the defendants filed a motion to compel on October 23, 1995. Villont filed no response.

The district court, on November 7, 1995, ordered the plaintiffs to answer the interrogatories and produce the requested documents by December 7, 1995. Villont did not notify his clients of the motion or the court's order. Again, he filed no response to the discovery requests.

The defendants then filed a motion for sanctions, requesting that the court dismiss the plaintiffs' case. A hearing on this motion was scheduled for January 17, 1996, but was reset at Villont's request for February 5, 1996. Still, Villont did not inform his clients of the events transpiring in their lawsuit.

Following the February hearing, the district court assessed monetary sanctions (defendants' attorney fees) against the plaintiffs and again ordered them to respond to discovery. Discovery responses were due by February 16, 1996, and the attorney's bill was to be paid within ten days of the date the plaintiffs received the bill. The trial court warned that any further failure to comply with court orders would be met with dismissal of the case. Again, Villont did not notify his clients of the court's ruling or the possibility of dismissal. He did file incomplete discovery responses by February 16, but the bill he received from the defendants' attorney remained unpaid.

The defendants filed a second request for production of documents on March 12, 1996, requesting medical records predating the accident. A third request for production of documents, seeking records concerning a prior accident, was filed on May 1, 1996. Villont filed no response to either request.

On May 29, 1996, the defendants filed a second motion to compel discovery and renewed their request for sanctions. This motion was based on the incomplete response to the first set of discovery requests and the lack of any response to the second request for production of documents. The defendants also pointed out their attorney's bill had not yet been paid. A motion to compel responses to the third request for production of documents was filed on June 24, 1996.

The court held a hearing on the May motion to compel on July 1, 1996, and entered an order requiring production of the requested documents and payment of the attorney's bill within ten days. The district court also scheduled a hearing for July 29, 1996, to consider the defendants' request that the case be dismissed as a discovery sanction. Villont was ordered to file a certification that he had informed his clients of the hearing, why it was scheduled, what the possible sanctions were, and their right to be present at the hearing. The pretrial conference was rescheduled for July 29 also. (The trial was scheduled to commence on August 7, 1996.) Villont filed the required responses (although still incomplete in some respects) and paid the monetary sanctions on July 11, 1996, less than thirty days before trial, but within the time set by the court's most recent order compelling discovery.

On July 29, the date set for the hearing on sanctions, Villont told the court he had not informed his clients of the pending matters, as the court had ordered him to do. Consequently, the court rescheduled the hearing for August 5, 1996, and again directed Villont to notify his clients. On August 2, 1996, Villont advised the Wisconsin attorney who had referred the case to him of the pending discovery matters.

The hearing on the motion for sanctions was held on August 5. At that time the plaintiffs appeared with their Wisconsin

counsel and another Iowa lawyer. Villont orally requested permission to withdraw. The plaintiffs testified they had been unaware until a few days earlier of Villont's failure to comply with the defendants' discovery requests and the court's orders. They testified they had promptly supplied any information requested by Villont.

The district court found that Villont was solely responsible for the discovery problems in this case:

> Plaintiffs were not aware of defendants' efforts to secure and compel discovery from them. There is no indication that plaintiffs' failure to respond to discovery requests and court orders was intentional. The failure to respond to discovery requests and court orders was the fault of plaintiffs' counsel attorney Jay D. Villont. No excuse nor explanation has been presented to the court to explain counsel's failure to comply. The refusal of plaintiffs' counsel Jay D. Villont to comply with the court's discovery orders is the result of willfulness and fault on the part of attorney Villont.

The court also noted the plaintiffs had not yet fully responded to the defendants' discovery requests. The court found the defendants were prejudiced in their preparation for trial due to the tardiness of the plaintiffs' responses.

In deciding whether dismissal was an appropriate sanction, the district court noted "the conflicting policies" of the need to prevent delay and the desire to decide cases on their merits. The court considered the number of violations of its orders; the length of time it took the plaintiffs to comply with the court's orders; the plaintiffs' failure to comply with the court's orders in spite of the February order advising that any future failure by plaintiffs to timely comply with the court's orders would subject the plaintiffs to the sanction of dismissal; the imminent trial date the parties helped select; and the fact that, only two days before trial, the plaintiffs had still not produced the medical records of Gladys Troendle's prior injury, contrary to the court's discovery order of July 1, 1996. Finding the refusal of the plaintiffs, "through their counsel," to comply with the court's orders was "the result of willfulness and fault on the part of" the plaintiffs, the court concluded dismissal was an appropriate sanction. The plaintiffs appeal.

## II. Standard of Review.

■■■ A district court's order imposing discovery sanctions will not be disturbed unless the court abused its discretion. See Kendall/Hunt Publ'g Co. v. Rowe, 424 N.W.2d 235, 240 (Iowa 1988). An abuse of discretion consists of a ruling which rests upon clearly untenable or unreasonable grounds. See Squealer Feeds v. Pickering, 530 N.W.2d 678, 681 (Iowa 1995). We must also be satisfied that substantial evidence supports any factual findings necessary to the court's exercise of its discretion. See State ex rel. Parcel v. St. John, 308 N.W.2d 8, 10 (Iowa 1981).

## III. Applicable Legal Principles.

In dismissing the plaintiffs' case, the district court acted pursuant to its authority under Iowa Rule of Civil Procedure 134(b), which allows the court to impose sanctions on a party who fails to obey the court's order to provide or permit discovery. These sanctions may include dismissal of a disobedient plaintiff's action or the entry of judgment by default against an offending defendant. Iowa R. Civ. P. 134(b)(2)(C).

Because the sanctions of dismissal and default judgment preclude a trial on the merits, the range of the trial court's discretion to impose such sanctions is narrow. We have consistently held that in order to justify dismissal or judgment by default, a party's noncompliance with the court's discovery orders must be the result of willfulness, fault or bad faith. See, e.g., Kendall/Hunt, 424 N.W.2d at 240; Postma v. Sioux Center News, 393 N.W.2d 314, 318 (Iowa 1986); Smiley v. Twin City Beef Co., 236 N.W.2d 356, 360 (Iowa 1975). This rule "reflects the 'proper balance between the conflicting policies'" of avoiding delays and deciding cases on their merits. Kendall/Hunt, 424 N.W.2d at 240 (quoting Edgar v. Slaughter, 548 F.2d 770, 772 (8th Cir.1977)).

We stated in Kendall/Hunt that generally the extreme sanction of dismissal or default should not be imposed absent a finding the client "deliberately or in bad faith" failed to

comply with the court's order. *Id.* at 241 (quoting *Edgar,* 548 F.2d at 773). Nevertheless, we went on to clarify that such a finding was not essential to imposing a sanction of dismissal or default, noting "[s]uch an absolute, rule would conflict with the well-established rule that clients are responsible for the actions of their lawyers." *Id.* We recognized, therefore, that "in appropriate circumstances dismissal or default may be visited upon [clients] because of the actions of their lawyers." *Id.* (citing *Krugman v. Palmer College of Chiropractic,* 422 N.W.2d 470, 474 (Iowa 1988)).

■ The plaintiffs urge us to abandon the rule that the sins of the attorney may be visited upon the client. They argue it is an outmoded concept modeled after the caveat emptor doctrine. We decline the plaintiffs' invitation for several reasons.

First, the rule that a client must suffer the consequences or reap the benefits of his or her attorney's decisions is a well-established principle of agency law. *See State v. LaMar,* 224 N.W.2d 252, 254 (Iowa 1974) ("It is the general rule that a client is bound by the acts of his attorney within the scope of the latter's authority."); 7 Am.Jur.2d *Attorneys at Law* § 147, at 196–97 (1997) ("Where the relation of attorney and client exists, the client is bound by the acts of his or her attorney within the scope of the latter's authority . . . ."); *id.* § 157, at 202 (setting forth general rule "that the acts and omissions of an attorney acting within the scope of his or her authority are regarded as the acts of the person he or she represents"). *See generally Dillon v. City of Davenport,* 366 N.W.2d 918, 923 (Iowa 1985) (holding relationship of client and attorney is one of principal and agent). This rule has broad application, permeating *all* aspects of the attorney/client relationship, not just discovery matters. *See, e.g., State ex rel. Miller v. Rahmani,* 472 N.W.2d 254, 258 (Iowa 1991) ("Generally, when a lawyer drafts language on behalf of a client, the representations are attributed to the client."); *City of Des Moines v. Civil Serv. Comm'n,* 334 N.W.2d 133, 135 (Iowa 1983) ("Ordinarily, notice given by an attorney is the act of the client."); *Sims v. State,* 295 N.W.2d 420, 425 (Iowa 1980) ("Ordinarily, . . . the accused is bound by the tactical or strategic decisions made by counsel, even though rising to constitutional dimensions."); *State v. Howell,* 290 N.W.2d 355, 359 (Iowa 1980) ("As a general rule 'admissions of an attorney, whether written or oral, if relevant and material and within the scope of his employment, are admissible against his client.' ") (quoting *Suntken v. Suntken,* 223 Iowa 347, 356, 272 N.W. 132, 137 (1937)). If we were to suspend the application of this legal principle every time an attorney makes a poor decision, the exception would do away with the rule. Furthermore, the stability of transactions would be seriously undermined if a client were not bound by the actions of his or her attorney simply because those actions ultimately had an adverse impact on the client's interests.

■ It is, unfortunately, true that an attorney will not always make the right decision in handling a client's lawsuit. But that is why our law recognizes claims to recover damages for harm caused by an attorney's negligent representation. *See Schmitz v. Crotty,* 528 N.W.2d 112, 115 (Iowa 1995) (outlining elements of legal malpractice claim). The plaintiffs' remedy here lies in a legal malpractice action, not in a rule that would make the defendants suffer the consequences of the misconduct of the plaintiffs' attorney.

That brings us to the final reason the plaintiffs' suggestion lacks merit. The rules governing the situation before us are *not* similar to the caveat emptor doctrine. The doctrine of caveat emptor developed in the law of sales. *See State ex rel. Miller v. Hydro Mag, Ltd.,* 436 N.W.2d 617, 620 (Iowa 1989); 67A Am.Jur.2d *Sales* § 701, at 61 (1985). This doctrine—"let the buyer beware"—placed the consequences of any deficiency in goods on the buyer of the goods, not the seller, unless the seller was guilty of fraud in inducing the sale. *See Miller,* 436 N.W.2d at 620, 67A Am.Jur.2d *Sales* § 701, at 61. Over time, courts have limited this doctrine, shifting the responsibility for defective goods back to the seller of those goods. *See* 67A Am.Jur.2d *Sales* § 701, at 61 ("[T]he 'caveat emptor' doctrine was continually narrowed in scope, the tendency being to enlarge the responsibility of the seller and to imply a warranty on his part. . . .").

The plaintiffs claim they are like the innocent buyer, suffering the consequences of another's—their attorney's—fault. The problem with the plaintiffs' analogy is that the defendants, to whom those consequences would be shifted, are not comparable to the seller of defective goods. The defendants had nothing to do with the plaintiffs' choice of lawyers, nor with the poor decisions made by that lawyer. Unlike the seller of defective goods, the defendants are blameless. Thus, rejection of the principles which have traditionally placed responsibility for the decisions of an attorney on the attorney's client would shift the adverse effects of those decisions to a totally innocent party. Consequently, it does not follow that rejection of the caveat emptor doctrine requires rejection of the principles of law governing a client's responsibility for the actions of counsel.

### IV. *Appropriateness of Dismissal.*

■ As we have discussed, under the legal principles governing discovery sanctions, the district court had the authority to dismiss the plaintiffs' case if the plaintiffs' disobedience of the court's orders resulted from their attorney's willfulness, fault or bad faith. There is substantial evidence to support the trial court's finding that Villont willfully failed to comply with three court orders requiring that his clients respond to the defendants' discovery requests. In addition, these failures spanned a one year period, and compliance was still not complete two days before trial. *See Aquadrill, Inc. v. Environmental Compliance Consulting Servs., Inc.,* 558 N.W.2d 391, 396 (Iowa 1997) (finding defendant's noncompliance with court's discovery order was willful where defendant produced only some of the requested documents and showed no efforts taken to obtain the remainder of the requested information). Defendants were faced with the choice of an imminent trial for which they could not possibly have been prepared, or a continuance and further delay in resolving the claims against them. Under these egregious circumstances, we conclude the district court had a reasonable basis for imposing the extreme sanction of dismissal. Therefore, the district court did not abuse its discretion. *See Krugman,* 422 N.W.2d at 474 (affirming dismissal of action for plaintiff's counsel's disobedience of

three court orders, noting counsel's conduct left the trial court with the choice of continuing the case, which had been on file for three and one-half years, or dismissing it); *Bindel v. Larrington,* 543 N.W.2d 912, 914 (Iowa App.1995) (affirming the dismissal of a plaintiff's case due to "counsel's willful failure to comply with the district court's discovery order" where the case had been on file less than a year).

### V. *Summary.*

In summary, the actions of the plaintiffs' attorney in the case before us constituted *flagrant* violations of the rules of civil procedure and the district court's orders. The defendants were entitled to full and prompt discovery responses and a reliable trial date; despite the efforts of their attorney and the district court, the defendants were deprived of both. Plaintiffs placed their case in the hands of their attorney and must bear responsibility for his actions in the conduct of their case. Their remedy lies in an action against that attorney, not in shifting the consequences of their attorney's conduct to their opponent.

**AFFIRMED.**