**Judith A. WAGNER and Estate of Gary L. Wagner, Appellants,**

v.

**Greg MILLER; Edward D. Jones & Company, A Limited Partnership; and E.D.J. Holding Company, Inc., Appellees.**

No. 94–1501.

Court of Appeals of Iowa.

Aug. 30, 1996.

Nicholas G. Pothitakis, Steven J. Crowley and Darwin Bunger of Crowley & Bunger, Burlington, and Norman Rifkind, Philip Fertik and Patrick J. Sherlock of Beigel, Schy, Lasky, Rifkind, Goldberg & Fertik, Chicago, IL, for appellants.

David A. Hirsch of Beckman, Hirsch, Ell & Lewis, Burlington, and Helen Pauling Gab, St. Louis, MO, for appellees.

Considered by CADY, P.J., and STREIT and VOGEL, JJ.

VOGEL, Judge.

On November 17, 1992, Gary L. Wagner brought suit against Edward D. Jones & Co., a securities brokerage firm, E.D.J. Holding Company, Inc., its corporate general partner, and Greg Miller, an investment representative employed by Edward D. Jones & Co.[1] Judith Wagner, Wagner's wife, was added as a plaintiff in late 1993.[2] The Wagners sought damages for losses they claim to have sustained in connection with the investment in four limited partnerships which were purchased through Jones. The Wagners' claims are essentially based upon negligent misrepresentation and breach of fiduciary duty.[3]

---

1. The defendants will be collectively referred to as Jones.

2. While Judith did not join this action until late 1993, the plaintiffs will be referred to as the Wagners during the entirety of this opinion.

3. Clarence E. Logan brought this action with Wagner when the petition was originally filed. A motion to sever was granted on March 3, 1993.

On December 24, 1992, Jones served its First Request for Production of Documents and Notice of Service of First Set of Interrogatories on Gary Wagner. Among the twenty-six written interrogatories was interrogatory 21 which stated:

For each item of damages alleged in your Petition, please state the total amount of such damages; state the basis for and the calculations used to arrive at such amount alleged as damages; state whether there are any alternative methods by which you contend damages might be computed as to any claim against Defendants, and, if so, state such method and the total amount of damages using such method which you claim to have suffered; identify all documents that relate to your claimed damages, or were used in connection with preparing your responses to this Interrogatory; identify all persons having any knowledge of your damages or the computation thereof.

Also Interrogatory No. 19 requested information regarding any expert witnesses, in a fairly standard form. The Wagners asked for and were given an additional month to respond to the interrogatories and the document requests. On February 22, 1993, the Wagners responded to the interrogatories. The responses were designated as "draft" responses and were not verified or signed. The responses included six general objections to the interrogatories and specific objections to all of the interrogatories.

Upon reviewing the Wagners' responses, Jones determined the draft responses were deficient and contained improper objections. Jones conveyed dissatisfaction with the draft responses during the following month through communications with the Wagners' attorneys. On March 25, 1993, the Wagners submitted another set of responses which were again not verified.

Verified responses were finally submitted on April 12, 1993. Jones determined the prior complaints regarding the sufficiency of the responses had not been met and the responses were still deficient. In response to Interrogatory 21, the Wagners stated:

Plaintiff objects to that portion of this interrogatory which asks him to identify documents that relate to damages. Plaintiff will produce any such documents which are in his possession and the burden of deriving or ascertaining the answer to that portion of this interrogatory is substantially the same for the defendants as for these plaintiffs.

Plaintiffs have not computed damages in this matter at this time. However, plaintiffs believe their damages are the total amount of their investment, less distributions received, plus lost use of funds. Plaintiff is not aware of any alternative methods for computing damages at this time.

Jones continued to complain to the Wagners, during the following months, regarding the sufficiency of the responses. In an order dated July 14, 1993, the district court determined discovery was to be completed by February 15, 1994, and the trial was to commence on May 24, 1994.

The Wagners produced a set of documents for the first time in August 1993. Jones found this production to be not only deficient but also improperly produced since the documents were commingled with documents produced by Logan in his separate lawsuit, which made it extremely difficult for Jones to determine which plaintiff produced which documents. The Wagners filed supplemental responses to the interrogatories on December 21, 1993. Once again, Jones found these responses to be deficient. Jones filed a Motion to Compel Answers to Interrogatories and Production of Documents on January 12, 1994.

On January 24, 1994, the district court ordered the Wagners to file "full, fair and complete answers" to fourteen of the twenty-six interrogatories and to produce all documents responsive to the request for the production of documents. The district court ordered the foregoing to be accomplished no later than February 1, 1994.

The Wagners filed additional supplemental answers to the interrogatories on February 1. Regarding Interrogatory 21, the Wagners set out the same method for calculating damages, and listed the amount invested in each of the four investments. The Wagners indi-

cated the burden was on Jones to determine the distributions received from the produced documents but estimated it to be approximately $2500. The Wagners made no attempt to provide calculations for lost use of the funds.

Jones filed a motion for sanctions on March 10, 1994. The motion was based on the Wagners' failure to comply with the January 24 order of the district court regarding responses to interrogatories and the production of documents. On March 29, 1994, the district court found the Wagners had failed to comply with the previous January 24 order and ordered the Wagners, once again, to "fully, fairly, completely and accurately" answer the interrogatories with respect to the Wagners' claimed measure of damages. The Wagners did not file any additional responses after the district court's March 29 order.

Jones filed a motion to dismiss on May 9, 1994, two weeks prior to when the trial was scheduled to begin. This motion was based on the Wagners' repeated failures to comply with discovery requests and the repeated failures to comply with court orders. Then, on May 11, 1994, the Wagners filed a motion in limine concerning damages. The Wagners argued they should be allowed to have their expert testify as to damages under the "benefit of the bargain" rule as well as testify as to consequential damages. The motion to dismiss came on for hearing May 17, 1994, one week prior to the scheduled jury trial. The district court found multiple discovery abuses occurred during the course of this case. It found the inadequate response to the damages interrogatory to be a delay tactic. The court found that the "benefit of the bargain" damage calculation differed substantially from the prior theory of "lost use of the funds," which amounted to a new theory being sprung on the Jones on the eve of the trial. It also found the delayed responses to the expert witness interrogatory, tied with the theory of damages, effectively eroded Jones's discovery efforts and trial preparation. The court further found the case could have been dismissed at the previous motion for sanctions hearing but the Wagners were given one more opportunity to comply. Since they did not, and combined with the many discovery abuses, the court determined the Wagners' conduct was willful and dismissal was the only appropriate sanction.

The Wagners appeal.

Our review of discovery sanctions is for an abuse of discretion. *Kendall/Hunt Pub. Co. v. Rowe*, 424 N.W.2d 235, 240 (Iowa 1988). An abuse of discretion occurs when the ruling rests on grounds or reasons clearly untenable or unreasonable. *Squealer Feeds v. Pickering*, 530 N.W.2d 678, 681 (Iowa 1995). Generally, there is an abuse of discretion in imposing discovery sanctions only where there is a lack of substantial evidence to support the trial court's ruling. *State ex rel. Parcel v. St. John*, 308 N.W.2d 8, 10 (Iowa 1981); *Smiley v. Twin City Beef Co.*, 236 N.W.2d 356, 360 (Iowa 1975).

When the drastic sanction of dismissal is at issue, the range of discretion given to the district court narrows. *Kendall/Hunt*, 424 N.W.2d at 240; *Kachevas, Inc. v. State*, 524 N.W.2d 450, 452 (Iowa App.1994). Dismissal is a drastic measure that should not be ordered absent willfulness, fault, or bad faith. *McQuillen v. City of Sioux City*, 306 N.W.2d 789, 791 (Iowa 1981); *Kachevas*, 524 N.W.2d at 452. The fact sanctions less drastic than dismissal are available to the trial court does not require us to find an abuse of discretion. *McQuillen*, 306 N.W.2d at 791; *Bindel v. Larrington*, 543 N.W.2d 912, 914 (Iowa App.1995). Dismissal is a discovery sanction generally used when a party has violated a trial court's order. *Suckow v. Boone State Bank & Trust Co.*, 314 N.W.2d 421, 426 (Iowa 1982).

It is well established "that clients are responsible for the actions of their lawyers and in appropriate circumstances dismissal or default may be visited upon them because of the actions of their attorneys." *Kendall/Hunt*, 424 N.W.2d at 241. Willfulness, fault, or bad faith need not be on the part of a party herself. *See Bindel*, 543 N.W.2d at 914. Instead, an attorney's action or inaction may serve as a basis for dismissal of a client's case. *Kendall/Hunt*, 424 N.W.2d at 241; *Bindel*, 543 N.W.2d at 914.

Our discovery rules are designed to promote the orderly and timely administration of justice. Vague or incomplete answers to interrogatories and last minute substantive changes to the method of establishing damages, virtually foreclosing discovery by the opposition, are repugnant to the orderly process of case management and administration of justice. Such tactics also drain the limited temporal resources of the trial court by preventing other litigants access to the court. It is discourteous to other attorneys and to parties unknown to the perpetrator of the delay.[4]

 The Wagners were party to numerous delays. However, the Wagners' conduct, from early January 1994 to just prior to trial, was the most egregious. The Wagners chose to continue on, nearing the trial date, with only partial compliance to discovery requests. The Wagners argue they substantially complied with discovery requests and relied on the general damage calculation disclosed, as set forth above. Wagner contends his response was sufficient. The district court found otherwise. Through two separate orders of the district court to comply "fully, fairly and completely," there should have been no doubt in the Wagners' minds that their efforts fell short and corrective action was imperative. Yet, the Wagners, even given a second chance on March 29, 1994, did nothing further. As the district court noted, the Wagners must have been waiting for a third wake-up call from the court. The failure of a party to fully comply with multiple orders by the district court to answer interrogatories can provide the basis for using dismissal as a discovery sanction. *See Kachevas*, 524 N.W.2d at 452. We find there was substantial evidence to support the district court's finding this behavior to be willfully contemptuous, in direct violation of two court orders.

Less than two weeks before trial, the Wagners switched tactics by asking the district court for permission to use a different theory to prove damages. While the Wagners argue it is not a different method of calculation, merely phrased differently, the trial court

found otherwise and we agree. Jones still did not have adequate information upon which to form a defense while the Wagners continued on with a veil of vagueness protecting their case and attempting to side step two court orders to comply.

We find the district court did not abuse its discretion to dismiss the Wagners' case as there was substantial evidence to support the court's sanction.

**AFFIRMED.**

---

4. To accommodate the last minute hearing on the motion to dismiss, the court was forced to continue a dissolution of marriage case where child custody was in issue.