# IN THE COURT OF APPEALS OF IOWA

No. 17-1896
Filed February 20, 2019


**DOMINIC CLESTER,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____


Appeal from the Iowa District Court for Muscatine County, Mark J. Smith,

Judge.


Dominic Clester appeals the district court's dismissal of his application for

postconviction relief. **REVERSED AND REMANDED.**


Timothy J. Tupper of Tupper Law Firm, Davenport, for appellant.

Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney

General, for appellee State.


Considered by Tabor, P.J., and Mullins and Bower, JJ.

**TABOR, Judge.**

Dominic Clester appeals the district court's dismissal of his application for postconviction relief (PCR). The court dismissed the PCR application as a sanction for appointed counsel's failure to comply with its order to compel a response to the State's discovery requests. Because the court made no finding Clester's noncompliance was due to willfulness, bad faith, or fault, we reverse the dismissal of his PCR application.

## I.      Background Facts and Proceedings.

In May 2015, Clester pleaded guilty to second-degree robbery and second-degree burglary. At his plea hearing, the twenty-three-year-old advised the district court he was taking three prescription medications: one antipsychotic and two for seizures. As a factual basis for his guilty plea, Clester admitted a woman asked him to leave her apartment and he instead assaulted her with the intent to commit a theft. The district court sentenced Clester to indeterminate terms of ten years and twenty-five years, to be served consecutively.

In December 2016, Clester filed a PCR application as a self-represented litigant. The court appointed an attorney to represent Clester. In March 2017, that attorney filed an amended application, alleging trial counsel was ineffective in three ways: (1) by failing to fully investigate the case, leaving Clester to plead guilty based on inaccurate information; (2) by failing to fully investigate the possibility of a diminished-capacity defense based on Clester's "extreme intoxication at the time of this offense as well as [his] numerous mental health issues"; and (3) by failing to fully investigate whether second-degree robbery and first-degree burglary were subject to the merger doctrine.

The State answered Clester's petition the following day. On April 4, the State filed its notice of discovery: six interrogatories, including a request Clester sign a waiver allowing the State to access his medical records from the Muscatine County Jail. The PCR court set trial for November 1, 2017, requiring all written discovery be served no later than ninety days before trial—a deadline falling on August 3.

By July 1, Clester and his PCR attorney had yet to respond to the State's discovery requests. So the State filed a motion to compel asking the court to require Clester to respond to the interrogatories within thirty days. The State's motion went unresisted.[1] On July 24, the court granted the State's motion to compel, giving Clester until August 11 to answer the State's interrogatories and sign the medical waiver.

August 11 came and went, and the State still had not heard from Clester. On August 13, the State filed a motion to dismiss Clester's PCR application as a sanction for his failure to comply with discovery. The State's motion again went unresisted. So on September 5, the PCR court granted the State's motion to dismiss.[2]

Two weeks later, PCR counsel filed a motion to reconsider asking the court to reinstate Clester's application. Counsel assured the court the failure to respond

---

[1] Clester's counsel stated he "did not file a resistance to [the State's motion to compel] since [counsel] was aware that the State was entitled to the responses."

[2] The court's order was terse:

> The State, by and through County Attorney Alan Ostergren, has filed a motion to dismiss for failure to answer interrogatories on or before August 11, 2017[,] as previously ordered by the court. No resistance has been filed by the applicant. After review of the file, the court finds that the State's motion should be and is hereby granted. Court costs are assessed against the applicant.

to the State's interrogatories fell "solely on [his] shoulders" and was not his client's fault. Counsel pointed to his "extreme workload" in explaining his unresponsiveness. Counsel filed a response to the interrogatories on October 15. The State resisted reinstatement of the application.

Ten days later, the court denied Clester's motion, providing this analysis:

> To say the least, the [c]ourt is more than a little frustrated with applicant's counsel in failing to respond to either the motion to compel or the request for dismissal due to failure to abide by the discovery rules. Counsel's claim of excessive caseload, given the time between the first [m]otion to [c]ompel and the dismissal is no excuse. Answers to [i]nterrogatories[,] which are mere conclusions and contain little factual information[,] were not filed until October 15, 2017. The State has still not received the medical waiver it requested to allow them to review applicant's medical records.

Clester appeals the dismissal of his application.

## II.     Scope and Standards of Review.

In general, we review PCR proceedings for the correction of errors at law. *Everett v. State*, 789 N.W.2d 151, 155 (Iowa 2010). But we apply an abuse-of-discretion standard to a district court's imposition of discovery sanctions.[3] *Lawson*

---

[3] In discussing the standard of review, the State frames the question as whether the court abused its discretion in finding "counsel failed to provide good cause for reinstatement." But the State does not return to the good-cause standard in the merits section of its brief; instead it discusses whether the court abused its discretion in dismissing the application as a discovery sanction. In the district court, both parties referred to "setting aside the default judgment." While the district court did not expressly enter a default judgment, its dismissal of the action encompasses that remedy. *See Aldrich v. San Fernando Valley Lumber Co.*, 216 Cal. Rptr. 300, 306 (Dist. Ct. App. 1985) ("It is apparent that an order of dismissal entered for failure to comply with an order compelling answers to interrogatories is the practical equivalent of a default judgment."); *see also* 12 Barry A. Lindahl, *Iowa Practice Series: Civil & Appellate Procedure* § 40:1 (May 2018 Update) ("An involuntary dismissal is an adjudication on the merits whether it states that it is with or without prejudice. Thus, . . . where a petition has been dismissed for failure to produce documents, such dismissal is involuntary and constitutes an adjudication on the merits for purposes relating to application of the doctrine of res judicata."). Still, the issue before us is whether the court abused its discretion in dismissing Clester's PCR application as a sanction for counsel's noncompliance with a discovery order.

*v. Kurtzhals*, 792 N.W.2d 251, 258 (Iowa 2010). A court abuses its discretion when its ruling rests upon grounds clearly unreasonable or untenable. *Id.* Generally, we only find an abuse of discretion in the imposition of discovery sanctions "where there is a lack of substantial evidence to support the trial court's ruling." *Wagner v. Miller*, 555 N.W.2d 246, 249 (Iowa Ct. App. 2005).

But "because the sanctions of dismissal and default judgment preclude a trial on the merits, the range of the trial court's discretion to impose such sanctions is narrow*." In re Marriage of Williams*, 595 N.W.2d 126, 129 (Iowa 1999). Given the severity of dismissal and default, the court must find noncompliance was a result of willfulness, fault, or bad faith before imposing either sanction. *Marovec v. PMX Indus.*, 693 N.W.2d 779, 778 (Iowa 2005).

## III. Analysis

Clester's argument recognizes the parties in a PCR action have available "[a]ll rules and statutes applicable in civil proceedings including pretrial and discovery procedures." Iowa Code § 822.7 (2017); *see Nuzum v. State*, 300 N.W.2d 131, 132–33 (Iowa 1981) ("Rules and statutes governing the conduct of civil proceedings are applicable to postconviction proceedings."). But Clester insists the district court went too far in dismissing his PCR application as a discovery sanction when his appointed counsel was solely to blame for the noncompliance.[4] Although he does not overtly raise a constitutional claim, Clester

---

[4] Clester does not argue PCR trial counsel provided ineffective assistance. If he had, he could have asserted structural error. *Cf. Villa Magana v. State*, 908 N.W.2d 255, 259 (Iowa 2018) (finding structural error where PCR counsel "failed to take necessary action to prevent [a] client's application from being dismissed" for want of prosecution because the attorney's inaction resulted in dismissal of the application absent consideration on the merits or meaningful adversarial testing—a constructive denial of counsel); *Lado v. State*, 804 N.W.2d 248, 252–53 (Iowa 2011) (finding structural error where counsel failed to seek

asserts, "[F]undamental fairness requires appropriate sanctions, short of dismissal or default, be applied to [his] postconviction counsel and that the underlying postconviction matter be reinstated."

The district court acted under Iowa Rule of Civil Procedure 1.517, dealing with the consequences for discovery violations. If, after the court grants a motion to compel discovery, a party fails to serve answers to interrogatories, the court may "make such orders in regard to the failure as are just," including dismissal or entry of default against the offending party. Iowa R. Civ. P. 1.517(2)(b)(3). And in the appropriate circumstances, "dismissal or default may be visited upon [clients] because of the actions of their lawyers." *See Kendall/Hunt Pub. Co. v. Rowe*, 424 N.W.2d 235, 241 (Iowa 1988). But dismissal under those circumstances must be the "rare judicial act." *Id.* (quoting *Edgar v. Slaughter*, 548 F.2d 770, 773 (8th Cir. 1977) ("When noncompliance is the result of dilatory conduct by counsel, the courts should investigate the attorney's responsibility as an officer of the court and, if appropriate, impose on the client sanctions less extreme than dismissal or default, unless it is shown that the client is deliberately or in bad faith failing to comply with the court's order.")). The Eighth Circuit emphasized, "[I]n our system of justice the opportunity to be heard is a litigant's most precious right and should be sparingly denied." *Edgar*, 548 F.2d at 773.

---

a continuance to "prevent dismissal under Iowa Rule of Civil Procedure 1.944"). Because we find dismissal was an abuse of discretion, we need not reach the question whether an appellate court may sua sponte consider whether a PCR dismissal constitutes structural error. *See Villa Magana*, 908 N.W.2d at 260 (bypassing general error preservation rules and opining PCR applicant "should not suffer the consequences" from his appellate counsel not raising *Lado* issue until the reply brief).

The State defends the dismissal as an appropriate remedy "[d]espite its stark nature." The State cites *Mott v. State*, where a panel of our court reversed a default judgment against a PCR applicant who failed to appear for trial. *See* No. 12-1293, 2013 WL 5962908, at *1 (Iowa Ct. App. Nov. 6, 2013). In dicta, our court noted, "Our findings today should not be construed to indicate a default judgment is never available in postconviction proceedings. A default judgment may be a proper remedy in some situations." *Id.* at *1 n.3. But the State does not point us to any of those situations. Nor did our search lead us to any Iowa case upholding the dismissal of a PCR application as a discovery sanction based on the dilatory actions of appointed counsel.

We *did* find precedent disfavoring default when the roles were reversed and the State failed to comply with the rules of civil procedure. For instance, in *Furgison v. State*, the PCR applicant sought a default judgment based on the State's failure to respond to his original filing within thirty days. 217 N.W.2d 613, 617 (Iowa 1974). The supreme court acknowledged the PCR chapter incorporated the rules of civil procedure but hedged: "Even so, such a collateral review of criminal judgments should be tailored to the purpose thereof without characterization as criminal or civil. It must encompass some attributes of each where appropriate to the objective, at the same time eliminating those inappropriate to the remedial process." *Id.*

The *Furgison* court found the PCR chapter revealed no provision "specifically or inferentially" allowing for a default judgment in the event the State failed to respond to an application within the timeframe allowed under the rules of civil procedure. *Id.* at 618. Because the State's noncompliance could not "breathe

life into an otherwise meritless application," the *Furgison* court held, "[D]efault procedures are inconsistent with and would serve no useful purpose in our postconviction review process." *Id.*; *see also Thomas v. State Bd. of Parole*, 220 N.W.2d 874, 877 (Iowa 1974) (upholding extension of time for State to respond to PCR application, noting intent of PCR procedure "appears to be to get at the merits of the controversy" and observing "situation is not akin to a private suit on a note in which the plaintiff is entitled to his judgment if the defendant defaults").

Of course, the consequences differ when a default judgment is entered in the State's favor. Clester's convictions are not upended based solely on dilatory conduct by a county attorney in responding to what may be a meritless application. But at the same time, if—as our supreme court intuited—the legislature designed chapter 822 to "get at the merits of the controversy," that design should likewise shield Clester from a default judgment based solely on the dilatory conduct of his court-appointed counsel. Rather than breathing life into what may be an otherwise meritless application, default judgment here suffocates what may have been a meritorious application.

Even assuming a default judgment may in some rare set of circumstances be appropriate to sanction a PCR applicant's failure to comply with the State's discovery requests, the record does not support that extreme result in Clester's situation. *See Troendle v. Hanson*, 570 N.W.2d 753, 755 (Iowa 1997) (requiring substantial evidence in support of factual findings necessary to district court's exercise of discretion). In arguing dismissal was justified, the State relies on *Krueger v. Cannon*, where our court upheld the dismissal of a legal malpractice action based on counsel's unresponsiveness and abuse of the discovery process.

*See* No. 03-0127, 2004 WL 242913, at *1 (Iowa Ct. App. Feb. 11, 2004). But *Krueger* is distinguishable—there, the district court explicitly found noncompliance was "deliberat[e], without cause, and lacking good faith," further noting the party, through its counsel, found the "whole discovery process as too burdensome and unnecessary.'" *Cf. id.* The PCR court here made no such finding about Clester— instead, it merely expressed frustration with "applicant's counsel in failing to respond" and deemed counsel's claim of "excessive caseload" as "no excuse."

Our supreme court has justified holding clients responsible for the noncompliance of their attorneys, at least in part, because civil litigants generally choose their own lawyers and may seek recourse for a lawyer's negligence through a malpractice action. *E.g.*, *Troendle*, 570 N.W.2d at 756–57 ("Plaintiffs placed their case in the hands of their attorney and must bear responsibility for his actions in the conduct of their case."); *Krugman v. Palmer Coll. Of Chiropractic*, 422 N.W.2d 470, 475 (Iowa 1988) ("We regret that the sanction in this case visits the sins of counsel on his client. But 'a litigant chooses counsel at his peril, and here, as in countless other contexts, counsel's disregard of his professional responsibilities can lead to extinction of his client's claim.'" (quoting *Cline Forty– Second St. Theatre v. Allied Artists*, 602 F.2d 1062, 1068 (2d Cir. 1979))).

But that rationale doesn't fit indigent PCR applicants who rely on appointed counsel. Clester did not choose his attorney.[5] And his attorney took full responsibility for the dereliction of duty. Under these circumstances, the district

---

[5] And Clester likely could not file a malpractice claim against his postconviction counsel unless he obtained relief from his convictions. *See Kraklio v. Simmons*, 909 N.W.2d 427, 436 (Iowa 2018) (explaining "claim for legal malpractice arising from a criminal case does not accrue until relief from a conviction is obtained").

court should have considered whether a sanction less drastic than dismissal would have been more just and effective. *See Kendall/Hunt Pub. Co.*, 424 N.W.2d at 241 (quoting *Edgar*, 548 F.2d at 773)); *see also Phan v. Morrow*, 60 P.3d 1111, 1113 (Or. Ct. App. 2003) ("While the trial court could, on proper determination, have held petitioner's counsel in contempt for noncompliance with the scheduling order, we are unaware of any authority under [Oregon law] allowing the court to visit the sins of petitioner's court-appointed counsel on his client.").

In addition to overlooking lesser sanctions, the PCR court failed to make the necessary finding for dismissal. The dismissal order does not conclude Clester's noncompliance with the State's discovery requests resulted from willfulness, fault, or bad faith. The absence of that finding constitutes an abuse of discretion. *See 2049 Grp. Ltd. v. Galt Sand Co.*, 526 N.W.2d 876, 878 (Iowa Ct. App. 1994).

## IV.    Conclusion.

Absent a finding of willfulness, fault, or bad faith, it was an abuse of discretion to dismiss Clester's PCR application on this record. Accordingly, we reverse the dismissal order and reinstate Clester's application. We remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**