# IN THE COURT OF APPEALS OF IOWA

No. 20-0683
Filed July 21, 2021

ALAN ANDERSEN, Individually and as injured parent of CHELSEA
ANDERSEN and, BRODY ANDERSEN and DIANE ANDERSEN, Wife of Alan
Andersen,
        Plaintiffs-Appellants,

vs.

SOHIT KHANNA, M.D. and IOWA HEART CENTER, P.C.,
        Defendants-Appellees.
_____

        Appeal from the Iowa District Court for Polk County, Heather Lauber, Judge.


        Alan and Diane Andersen appeal the grant of mistrial and resulting

dismissal of their petition. **AFFIRMED.**


        Michael J. Streit of Sullivan & Ward, P.C., West Des Moines, and Marc S.

Harding of Harding Law Office, Des Moines, for appellants.

        Jennifer E. Rinden, Robert D. Houghton and Nancy J. Penner of

Shuttleworth & Ingersoll, P.L.C., Cedar Rapids, for appellees.


        Heard by Tabor, P.J. and Schumacher and Ahlers, JJ.

**AHLERS, Judge.**

The parties' first trial ended in mistrial. The parties' second trial ended in mistrial. The parties' third trial ended in a verdict for the defendants,[1] but our supreme court reversed in part and remanded for a new trial. After the parties' fourth trial ended in a mistrial, the district court ordered the action dismissed as a sanction. Plaintiffs Alan and Diane Andersen appeal, arguing the court abused its discretion in both granting a mistrial and dismissing their petition. We find no abuse of discretion and affirm.

**I.     Background Facts and Proceedings.**

Our supreme court set forth the then-current factual and procedural background of this action in its prior opinion:

> On January 2, 2004, Alan Andersen underwent a Bentall heart procedure performed by Dr. Sohit Khanna, an employee of the Iowa Heart Center, P.C. Khanna performed the procedure at the Mercy Hospital Medical Center in Des Moines. At the time, Khanna did not have any experience or training in performing the particular Bentall procedure used on Andersen. There were several complications with the procedure that resulted in Andersen being in a coma, undergoing a second heart surgery, and having a heart transplant.
>
> In September 2005, Andersen, his wife, and children filed a petition against Khanna, Iowa Heart, and Mercy. In addition to alleging negligence against Khanna, Iowa Heart, and Mercy, Andersen alleged Khanna and Mercy failed to obtain informed consent from Andersen prior to surgery. The basis of the informed-consent allegation was that Khanna, Iowa Heart, and Mercy failed to properly advise Andersen of the risks and dangers of the procedure.

*Andersen v. Khanna*, 913 N.W.2d 526, 530–31 (Iowa 2018) (footnote omitted).

---

[1] The defendants for this appeal are Dr. Sohit Khanna and Iowa Heart Center, P.C. (Iowa Heart). Mercy Hospital Medical Center was named as a defendant in the petition but was voluntarily dismissed before the first trial. We will refer to the defendants as "Khanna" and use "Dr. Khanna" to refer specifically to the doctor.

While surgery occurred in January 2004 and the petition was filed in September 2005, the case did not proceed to the first trial until October 31, 2011. During jury selection, the Andersens' counsel[2] told jurors Dr. Khanna "lied when talking to" the Andersens.[3] Khanna objected to this reference to having "lied," and the district court declared a mistrial.

The matter was scheduled for a second trial. Prior to that trial, the district court granted several motions in limine, including reaffirming its prior rulings from the first trial prohibiting the parties "from directly or indirectly stating or implying at any time during the course of the trial commencing with voir dire that the amount of past and/or future medical expenses is to be used as evidence in determining Plaintiff's past/future physical or mental pain and suffering."[4]

The second trial began on April 15, 2013. During jury selection, the Andersens' attorney (the same attorney as in the first trial) had the following exchange with a prospective juror about potential damages:

> [ATTORNEY]: [W]hat kind of evidence would you want to hear in terms of harms and losses that would help you calculate the damages?

---

[2] The Andersens' counsel at the first trial was an attorney from Nebraska admitted pro hac vice and is a different attorney than the attorneys representing the Andersens in this appeal.

[3] Voir dire was apparently unreported, though a transcript of the parties' ensuing arguments on Khanna's objection is in the record. The quoted language is the court's description of the statement. Khanna's counsel agreed the court's language is "exactly right." The Andersens' counsel replied, "If I stated it, that was wrong, Your Honor. That is wrong. But he has lied to the Andersens in this lawsuit."

[4] While the district court generally prohibited evidence of past and future medical expenses, it allowed such evidence for the limited purpose of issues arising under Iowa Code section 147.136 (2005). Section 147.136 is intended "to reduce the size of malpractice verdicts by barring recovery for the portion of the loss paid by collateral benefits." *Rudolph v. Iowa Methodist Med. Ctr.*, 293 N.W.2d 550, 558 (Iowa 1980).

> [PROSEPCTIVE JUROR]: Again, that's a hard question to answer. I guess just to hear the case from start to finish, you know, what the gentleman went into the hospital for, what did he see the doctor for, what were the circumstances, either he had a stroke or he had pneumonia and sepsis and pancreatitis, what led up to everything.
>
> [ATTORNEY]: Sure. Would you want to know how much his past medical bills were?

Khanna objected to the Andersens' attorney's reference to past medical bills, and the district court again declared a mistrial. In response to Khanna's subsequent motion for sanctions, the court declined to dismiss the Andersens' petition at the time. However, the court found the Andersens' attorney demonstrated "a disturbing pattern of behavior" in "clearly and unambiguously ventur[ing] into areas he knew or should have known were off limits," which showed his "zeal to pursue what he believes are the wrongs perpetrated on his clients by the defendants has clouded his judgment in a way that has been particularly deleterious to the interests of the parties and the judicial system." As a result, the court revoked the attorney's pro hac vice admission and awarded costs and fees to Khanna.

The Andersens' current trial counsel filed his appearance for them on May 23, 2014. The matter proceeded to a third trial beginning July 7, 2014. Prior to trial, Khanna secured an order prohibiting the parties from questioning lay witnesses about "hearsay statements by treating health care providers (other than Dr. Khanna)."[5] Nevertheless, during questioning of the witness, the Andersens' counsel had the following exchange:

---

[5] Khanna's preceding motion in limine specifically pointed to deposition testimony from Alan Andersen's sister that "a nurse told her (hearsay) that Dr. Khanna could not draw Mr. Andersen's procedure as it was 'so screwed up'" as a hearsay statement they sought to prohibit.

[ANDERSENS' COUNSEL]: So, Christine, let me ask you, was there anything else that was said by any of the healthcare providers there at the hospital to you on the twenty-fifth, Sunday, the twenty-fifth of January '04?

[KHANNA'S COUNSEL]: Excuse me, ma'am. I don't want to interrupt. Your Honor, I'm going to make an objection to this calling for hearsay.

THE COURT: Sustained. Unless you can be more precise on what you're trying to get at.

[ANDERSENS' COUNSEL]: Right. I'll withdraw the question and rephrase it.

Did any person that was, to your knowledge, involved in the surgery say anything to you that indicated to you that there had been something incorrectly done in that operating room while you were at the hospital?

[KHANNA'S COUNSEL]: Pardon me. I didn't mean to interrupt you, [Andersens' Counsel]. Same objection, Your Honor, hearsay.

THE COURT: Sustained.

[ANDERSENS' COUNSEL]: Did anybody from the operating room that had witnessed the surgery say anything to you that indicated that there had been a complete mess-up in the surgery?

[KHANNA'S COUNSEL]: Excuse me. Objection. May we approach?

Khanna moved for another mistrial due to Andersens' counsel attempting to elicit prohibited hearsay testimony. The court found the questioning expressly prohibited by the earlier order in limine and, even if the order did not apply, nothing in the testimony supported counsel's claim the witness's answer would be admissible as an excited utterance. However, the court decided a mistrial was not necessary due to instructions and admonishments to the jury. The court granted partial summary judgment for Khanna on the Andersens' informed-consent claims, and the jury returned a verdict for Khanna on the Andersens' negligence claims. The Andersens appealed, and the supreme court affirmed the negligence verdict but reversed and remanded for further proceedings on the informed-consent claims. *See Andersen*, 913 N.W.2d at 549.

A fourth trial for the informed-consent claims began on June 3, 2019. Prior to trial, Khanna secured several orders in limine to address issues arising in the prior trials and expected to arise in the fourth trial. The Andersens' attorney began his opening statement by stating:

> Thank you, your Honor. The average person will undergo nine surgical procedures during their lifetime according to a study by the American College of Surgeons, the Massachusetts Chapter. What brings us to the Polk County Courthouse are the safety rules and safety systems that protect us all from serious injury and death. These safety rules and safety systems protect us only if juries choose to enforce them.
> The first safety rule is the doctor is required by law to obtain informed consent from the patient. If he does not the doctor commits a crime and deprives[6]—

Khanna's counsel interrupted the opening statement at this point to request a sidebar, during which counsel moved for a mistrial due to the Andersens' counsel's statement that failure to obtain proper informed consent is a "crime." The district court agreed with Khanna and declared a mistrial. Khanna filed a motion for sanctions seeking dismissal of the Andersens' petition. The court granted the motion and imposed the sanction of dismissal, finding dismissal "the only appropriate sanction."

The Andersens appeal, arguing the district court abused its discretion in declaring a mistrial and dismissing their petition as a sanction.

---

[6] The Andersens' counsel used a slideshow during his opening statement. At the time Khanna's counsel interrupted the opening statement, a slide containing these words was being displayed to the jury:
**Three Rules**
1. Doctor is required by law to obtain informed consent from patient, if he does not the doctor commits a crime and deprives the patient of the right to know

## II.    Standard of Review.

We review a district court's decision on whether to grant a mistrial for an abuse of discretion.  *Fry v. Blauvelt*, 818 N.W.2d 123, 128 (Iowa 2012); *Yeager v. Durflinger*, 280 N.W.2d 1, 7 (Iowa 1979).  We also review the dismissal of a petition for an abuse of discretion, though the court's range of discretion to impose dismissal is narrowed.  *Suckow v. Boone State Bank & Tr. Co.*, 314 N.W.2d 421, 425 (Iowa 1982).

## III.    Discussion

### A.    Mistrial

As an initial matter, Khanna argues the Andersens failed to preserve error on their challenge to the grant of mistrial.  Khanna points to statements the Andersens' attorney made in an affidavit and at the sanctions hearing that the mistrial was "justified" and "appropriate under [the] circumstances."  To preserve an issue for our review, "a party must raise [the] issue and the district court must decide it."  *Duck Creek Tire Serv., Inc. v. Goodyear Corners, L.C.*, 796 N.W.2d 886, 892 (Iowa 2011).  At trial, Khanna moved for a mistrial after the "crime" statement, the Andersens resisted, and the court—after a brief sidebar in which the court explicitly confirmed Khanna was requesting a mistrial—granted the mistrial.  The court fully considered and ruled on the mistrial at this time, and the Andersens never waived their resistance to the mistrial.  The Andersens' attorney uttered his "justified" and "appropriate" statements for the subsequent arguments on sanctions, after the court already granted the mistrial.  Furthermore, we believe a party has room to acknowledge a mistrial is "justified" and even "appropriate" while still arguing a lesser action would be more appropriate, though we recognize

these statements significantly undercut the Andersens' claims on appeal that the court abused its discretion in granting the mistrial. Nevertheless, we find the mistrial ruling preserved for our review. To the extent Khanna specifically argues the Andersens did not preserve their argument for a curative instruction in lieu of mistrial, that argument was also preserved as the parties discussed the possibility of a curative instruction during the sidebar and the Andersens agreed with including a curative instruction if the court wanted to do so.

"A mistrial is appropriate when 'an impartial verdict cannot be reached' or the verdict 'would have to be reversed on appeal due to an obvious procedural error in the trial.'" *State v. Newell*, 710 N.W.2d 6, 32 (Iowa 2006) (quoting *State v. Piper*, 663 N.W.2d 894, 915 (Iowa 2003)). The Andersens argue the statutes support their assertion that failing to obtain proper informed consent is a crime. *See* Iowa Code §§ 147.137 (setting requirements for informed consent), .86 (stating any violation of chapter 147—with exceptions not relevant here—is a serious misdemeanor). Even if we accept that failure to obtain proper informed consent *could* be a crime, the record contains no indication Dr. Khanna—or any other physician—was ever convicted, charged, or even criminally investigated for failing to do so. Furthermore, whether Dr. Khanna committed a crime has little to no relevance to the Andersens' informed-consent claims.[7] The implication Dr.

---

[7] Generally, to succeed on a claim of informed consent, the plaintiff must establish four elements:
(1) The existence of a material risk [or information] unknown to the patient;
(2) A failure to disclose that risk [or information] on the part of the physician;

Khanna committed a crime by failing to obtain proper informed consent was highly prejudicial to him, and the district court did not abuse its discretion in determining a curative instruction would not have countered the unfair prejudice. *Accord State v. Huston*, 825 N.W.2d 531, 539 (Iowa 2013) ("We do not believe it would have been proper in this case to allow testimony that the child abuse report was determined to be founded even with a limiting instruction."). We find no abuse of discretion in granting Khanna's motion for a mistrial.

Nevertheless, the Andersens argue the district court should have reserved judgment on the motion for mistrial to better evaluate any prejudice from the offending comments in the context of the rest of the trial. The Andersens assert this court recently affirmed a grant of a new trial where the district court initially reserved judgment and gave a curative instruction in response to a mistrial motion, only granting the new trial after receiving the verdict. *See Kipp v. Stanford*, No. 18-2232, 2020 WL 3264319, at *3–5, 8 (Iowa Ct. App. June 17, 2020).[8] However, the offending comments in *Kipp* occurred during closing arguments. *See id.* Here,

---

        (3) Disclosure of the risk [or information] would have led a reasonable patient in plaintiff's position to reject the medical procedure or choose a different course of treatment;
        (4) Injury.

*Andersen*, 913 N.W.2d at 537 (quoting *Pauscher v. Iowa Methodist Med. Ctr.*, 408 N.W.2d 355, 360 (Iowa 1987)).

[8] Technically, *Kipp* involved a ruling on a post-trial motion for new trial and not a mistrial motion. 2020 WL 3264319, at *3–4. In *Kipp*, the district court denied defense counsel's motion for mistrial that was based on plaintiff's counsel's closing arguments. *Id.* at *4. In doing so, the court preserved the defense's right to file a motion for new trial or other post-trial motions based on the alleged improper closing argument. *Id.* After a verdict for the plaintiff, the court granted the defendant's motion for new trial based on improper closing argument. *Id.* at *4–5. We found no abuse of discretion in the district court's ruling and affirmed the grant of a new trial. *Id.* at *8.

the offending comments were made during the opening statement, just minutes into what was expected to be a complex multi-day trial in an action where the Andersens' attorneys had already shown a history of conduct warranting mistrials. Considering the severity and swiftness of the comments, we find no abuse of discretion in immediately declaring a mistrial rather than reserving judgment.

## B. Dismissal.

On appeal, the parties disagree whether the Andersens' attorney violated a court order or a court rule by referencing a "crime" in his opening statement. Nevertheless, the parties agree the district court may dismiss an action with prejudice as part of its inherent authority to impose sanctions.[9] *See State v. Iowa Dist. Ct.*, 750 N.W.2d 531, 534 (Iowa 2008) ("Of course, when a court is acting within its jurisdiction it always has the inherent authority to do what is reasonably necessary for the administration of justice in a case before the court.").

In exercising its inherent authority, the district court considered five factors to determine whether dismissal was appropriate:

> (1) the existence of certain extraordinary circumstances, (2) the presence of willfulness, bad faith, or fault by the offending party, (3) the efficacy of lesser sanctions, (4) the relationship or nexus between the misconduct drawing the dismissal sanction and the matters in controversy in the case, and finally, as optional considerations where appropriate, (5) the prejudice to the party victim of the misconduct.

*Estate of Ludwick ex rel. Sorsen v. Stryker Corp.*, No. 13-0754, 2014 WL 5475501, at *14 (Iowa Ct. App. Oct. 29, 2014) (quoting *Englebrick v. Worthington Indus.,*

---

[9] Because the issue is not presented for our review, we offer no opinion as to whether the court's inherent authority includes the power to order dismissal with prejudice as a sanction for repeated attorney misconduct.

*Inc.*, 944 F. Supp. 2d 899, 908–09 (C.D. Cal. 2013)); *see also Kendall/Hunt Publ'g Co. v. Rowe*, 424 N.W.2d 235, 240 (Iowa 1988) (stating a finding of "willfulness, fault, or bad faith" is required before ordering dismissal as a sanction). On appeal, the parties agree these were proper factors for the court to consider, so we will review the court's exercise of discretion applying the same factors.

### 1. Existence of certain extraordinary circumstances

"[E]xtraordinary circumstances exist where there is a pattern of disregard for Court orders and deceptive litigation tactics that threaten to interfere with the rightful decision of a case." *Englebrick*, 944 F. Supp. 2d at 909 (alteration in original) (quoting *In re Napster, Inc. Copyright Litig.*, 462 F.Supp.2d 1060, 1071 (N.D. Cal. 2006)). For this factor, the district court stated:

> Viewing this case in its entirety, it is very unusual to have a case proceed to trial four times. It is uncommon to have three of those trials end in mistrial, and it is exceedingly rare that all three mistrials are caused by the same party's misconduct. In each instance, and throughout this case's lengthy procedural history, the Andersens' counsel blatantly disregarded the court's orders and rulings. As such, there is a clear pattern of disregard for same. Moreover, in each occurrence, the conduct interfered with the rightful decision of the case by preventing the jury from rendering its decision. While extraordinary circumstances may not have existed, and dismissal may not have been an appropriate sanction, following the first, or even second, mistrial, the court finds that the Andersens' repeated and continuous misconduct rises to the level of extraordinary circumstances at this time.

The Andersens fault the court's analysis for "lump[ing] together" all three mistrials despite the Andersens having different counsel for the final trial. We agree with the court that the entire procedural history is relevant. *See Krugman v. Palmer Coll. Of Chiropractic*, 422 N.W.2d 470, 474 (Iowa 1988) (in reviewing dismissal for a discovery violation, finding "it relevant that there is a long record of

procrastination and inattentiveness").  While we agree with the Andersens that there is no evidence they personally had anything to do with the misconduct of their attorneys that caused the mistrials, "clients are responsible for the actions of their lawyers and in appropriate circumstances dismissal or default may be visited upon them because of the actions of their lawyers." *Rowe*, 424 N.W.2d at 241.

The Andersens also fault the court for holding an apparently unrecorded, ex parte conversation with the jury after declaring a mistrial.  During the sanctions hearing, the court specifically noted the jury asked about Dr. Khanna's "crime" after the mistrial.[10]  The Andersens argue it was improper for the court to consider this ex parte communication.  We believe the court's comments, which occurred at the end of the sanctions hearing, related to the court's earlier decision to grant a mistrial.  By talking to the jury after granting the mistrial, the court learned—and shared with counsel—that the references to "crime" had a real, prejudicial impact on the jury.  The court did not mention this conversation in its thorough order

---

[10] During the sanctions hearing, the court told the parties:

> One thing I do want to put on the record is when I did discharge the jury after the mistrial because sometimes from the transcripts you can't exactly tell how things happened or went down exactly, but when I did discharge the jury, they had picked up on that.
> They did ask what crime Doctor Khanna had been convicted of and wondered if that was why we were back for a second trial which is exactly the type of speculation we can't have jurors engaging in because they may end up deciding a case for a wrong reason or because of speculating something that didn't happen.
> I did want to place that on the record just so the parties are aware that the jurors certainly had picked that up and had questions about that.

granting dismissal, and there is no indication the court considered this conversation in deciding a sanction.[11]

### 2. Willfulness, bad faith, or fault by the offending party

"[D]isobedient conduct not shown to be outside the control of the litigant is all that is required to demonstrate willfulness, bad faith, or fault." *Englebrick*, 944 F. Supp. 2d at 909 (alteration in original) (quoting *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 948 (9th Cir. 1993)). "Willfulness" occurs when a voluntary act "involves conscious wrong or evil purpose on the part of the actor, or at least inexcusable carelessness, whether the act is right or wrong." *Willful*, Black's Law Dictionary (11th ed. 2019). "Bad faith" is "[d]ishonesty of belief, purpose, or motive." *Bad Faith*, Black's Law Dictionary. "Fault" includes "any deviation from prudence or duty resulting from inattention, incapacity, perversity, bad faith, or mismanagement." *Fault*, Black's Law Dictionary.

The district court opined the lack of preparation by the Andersens' counsel for their informed-consent claims suggested they acted in bad faith in causing a mistrial in order to better prepare for a fifth trial. However, the court declined to make an explicit finding of bad faith, instead finding the Andersens' counsel acted with willfulness and fault:

> It is clear that counsel's conduct was voluntary and intentional. Counsel had thought about the comment, and, in fact, had reduced it to writing. It was not inadvertent or a slip-of-the-tongue. It was intentionally included in counsel's opening statement. At best, it was also made with inexcusable carelessness. The Andersens' trial was about whether or not Khanna provided Andersen with all required information before Andersen elected to

---

[11] Consideration of the jurors' comments also did not influence the district court's declaration of the mistrial, as the mistrial declaration was completed before the conversation with the dismissed jurors.

undergo the [medical] procedure. It was not a criminal assault trial. It was not even a common law battery trial. The only issues for the jury to determine were [whether] or not Khanna provided the necessary information, and to the extent the jury concluded he had not, whether the Andersens suffered any damages from the lack of disclosure. Counsel's statement was not relevant, was highly prejudicial, and it was both inexcusably careless, and a lapse of judgment, for counsel to think otherwise.

For this factor, the Andersens' primary argument is their counsel could not have acted with "inexcusable carelessness" in mentioning a crime because failure to obtain proper informed consent may be a crime. *See* Iowa Code §§ 147.86, .137. As explained above, even if we assume failure to obtain proper informed consent is a crime, implying Dr. Khanna committed a crime is highly prejudicial with little to no relevance to the issues at trial. The fact the Andersens continue to make this assertion on appeal suggests they still do not grasp the seriousness of the comments even after a mistrial and resulting dismissal.

### 3. Efficacy of lesser sanctions

"The district court must, before dismissing an action under its inherent powers, consider less drastic sanctions." *Englebrick*, 944 F. Supp. 2d at 910 (quoting *Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 381 (9th Cir. 1988)). "What is most important for case-dispositive sanctions is whether the misconduct 'threaten[s] to interfere with the rightful decision of the case.'" *Id.* (alteration in original) (quoting *Valley Eng'rs Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998)).

The court recounted its prior sanctions, from admonishing counsel to monetary sanctions and revocation of the former lead counsel's pro hac vice admission. The court then found the violations by the Andersens' counsel

continued through the reference to crime in his opening statement and an accompanying slide:

> This was not a slip-of-the-tongue situation. Counsel thought about this argument and deliberately reduced it to writing; it was premeditated. Counsel was not deterred by any of the court's orders, admonitions, or prior sanctions, and the court finds it would be entirely futile to attempt more of the same. The court is not at all convinced that counsel's brazen disregard for the court's orders, especially in light of this case's unique procedural history, would be modified by the imposition of a monetary sanction (whether higher or lower than the range suggested by counsel) or merely by assessing the jury's cost against the Andersens. Indeed, the court cannot contemplate a single sanction that would operate as a deterrent under these facts. Accordingly, the court finds that dismissal is the only appropriate sanction.

For this factor, the Andersens assert monetary sanctions would be sufficient and the court did not fully consider lesser sanctions. However, the court's findings show it considered all of its prior actions, including the prior lesser sanctions that did not deter counsel from referencing "crime" in the final trial.

### 4. Misconduct in relation to matters in controversy

"The most critical criterion for the imposition of a dismissal sanction is that the misconduct penalized must relate to matters in controversy in such a way as to interfere with the rightful decision of the case." *Id.* at 911 (quoting *Halaco*, 843 F.2d at 381). The district court here found "counsel's conduct directly interfered with the decision of this matter. It prevented the jury from hearing both the Andersens' evidence and Khanna's defense. Khanna had prepared for trial. Witnesses, including experts, had been subpoenaed. The matter was ripe for the jury's adjudication." Furthermore, any "further delay in the proceedings would allow the Andersens to remedy their lack of preparation."

The Andersens argue this factor is better suited to discovery violations, where failure to produce discoverable information could prevent a party from fully arguing an issue. Here, the Andersens claim "the proof of any claim or defense was not affected" by the reference to "crime." However, as shown above, the court in exercising its discretion described how the conduct requiring mistrial deprived Khanna of the opportunity to present the defense already prepared for trial. The taint caused by the inflammatory accusation that Dr. Khanna committed a crime interfered with the rightful decision of the case.

### 5. Prejudice to the party victim of the misconduct

"As an optional factor, a court may consider the prejudice caused by a party's misconduct." *Id.* at 912. The court found "significant prejudice" to Khanna if the trial were rescheduled yet again:

> Khanna performed Andersen's [medical] procedure in 2004. This lawsuit was filed in 2005 . . . . It has been set for trial numerous times, with trial commencing on four separate occasions. Three of those trials ended in a mistrial—each time due to the conduct of the Andersens' counsel. If this case were set for trial again, it is likely a viable trial date would not exist until 2021 or later. Khanna would effectively be defending against alleged conduct from nearly twenty years earlier. The passage of time, the litigation costs, and the potential unavailability of witnesses would deeply prejudice Khanna.

The Andersens note they would suffer many of the same deleterious effects from waiting for another trial, they have waited almost twenty years for justice, and their ill health may endanger their ability to prosecute another trial. Furthermore, they argue the court's concerns with litigation costs can be addressed through monetary sanctions. However, we believe the prejudice to Khanna is the relevant consideration in light of the fact the Andersens are solely at fault for the three mistrials. We also do not believe prejudice can be eliminated by ordering monetary

sanctions, which could easily involve additional litigation over the determination of an appropriate amount and related issues, especially considering prior monetary sanctions have failed to deter counsel's conduct.

### 6. Analyzing the dismissal

As shown above, the district court fully considered the appropriateness of dismissal in its thorough and well-written order. The Andersens have not identified any errors in the court's analysis. Instead, their arguments at most go to the weight of matters within the court's discretion. We agree with the district court that the Andersens' conduct in causing a third mistrial despite prior lesser sanctions warrants a severe sanction. We find no abuse of discretion in dismissing the Andersens' petition.

## IV. Conclusion.

Describing the failure to obtain proper informed consent as a "crime" resulted in significant unfair prejudice with little to no relevance to the issues of informed consent to be presented at trial. We find no abuse of discretion in granting the mistrial. With this third mistrial caused by the Andersens despite escalating prior sanctions, we find no abuse of discretion in dismissing the petition as a sanction.

**AFFIRMED.**